REBECCA ROBERTS, ADM'X OF THE ESTATE OF RICHARD ROBERTS v. PARK B. KELSEY.

*Dissolution of firm by death of partner—Specific performance of logging contract.*

A firm is dissolved by the death of a partner unless the partnership articles specially provide for its continuance: and the settlement of partnership affairs is left to the survivor, who may, at a proper time, be required to account to decedent's personal representatives.

Where a contract is made between A on one side, and a firm composed of A and B on the other, A's death terminates the contract since it cannot remain in force without changing its conditions.

A logging contract between A on one side and a firm composed of A and B on the other, cannot be specifically enforced after the death of A, in behalf of his personal representatives, because a court of equity has no means of seeing to the execution of such a contract, and the judgment and business faculty of the deceased partner cannot be supplied.

Appeal from Ottawa.    Submitted April 4.    Decided April 9.

BILL FOR PARTNERSHIP ACCOUNTING and for specific performance.    Dismissed.    Complainant appeals.

*Lowing & Cross* and *Hughes, O'Brien & Smiley* for complainant.

*Akeley & Stewart* and *J. C. Fitzgerald* for defendant.

A personal contract in which the judgment of the individual is relied on is not binding after his death as to so much as remains unperformed, *Buck v. Smith*, 29 Mich., 166; a court will not attempt to execute a contract requiring a long time and the management of a complicated business, such as the manufacture of lumber, *Jackson v. De Forest*, 14 How. Pr., 81; *Blanchard v. Det., Lans. & L. Mich. R. R.*, 31 Mich., 54; *Marble Co. v. Ripley*, 10 Wall., 358.

CAMPBELL, C. J. The bill in this case was filed to enforce a contract made between Richard Roberts, complainant's intestate, and the firm of Roberts & Kelsey, which consisted of said Roberts and defendant. The case made by the bill is substantially as follows:

On the 17th of August, 1868, Roberts and Kelsey entered into written articles of copartnership whereby they became equally interested as partners. The firm property consisted under the articles of six hundred and sixteen acres of pine land and a steam saw-mill and various tools and implements, and the undivided half of a parcel of 27 30-100 acres of land conveyed by Roberts to the firm, and sixteen hundred and eighty acres of pine land conveyed by Joseph L. Kelsey and wife, the father and mother of defendant.

The business was to be getting off, manufacturing and marketing all the lumber from the pine lands of the firm, till all the timber was consumed unless otherwise agreed. Each was to devote his personal attention to the business. Roberts was to undertake the management of the mill and the marketing of the lumber and the financial affairs of the firm. Kelsey was to manage the logging in the woods and running of the logs to the mill when necessary, (the mill being at Grand Haven, and the pine lands on Flat river in Montcalm county). There was to be one common place of banking business, and all deposits were to be made and drawn in the firm name; but all drafts for a greater sum than five hundred dollars

were to be drawn by Roberts, "he being the senior member and principal financier of the firm." Provision was made against the use of firm money for private purposes, and against firm endorsements; and settlements could be had on ten days' notice. There was also the following clause at the close of the articles:

"And it is further agreed that the parties are to share equally all profits and gains of said business of the firm, and at the expiration of the business of the firm from any cause, the property, real and personal, and all the rights, benefit and advantage accruing to, or in any wise resulting from the business of said firm, or from the stock so furnished, shall belong equally to the parties, and be divided by them, or sold, and the funds divided as the parties shall agree."

On the 8th day of October, 1872, a new arrangement was made in writing, which is the one on which this suit is founded. On that day Kelsey conveyed all his interest in the mill to Roberts, and articles were drawn purporting to be between the firm of Roberts & Kelsey on the one hand and Roberts on the other to this effect: Roberts agreed to saw into lumber at his mill three million feet a year from logs to be furnished by the firm from their pine lands on Flat river, and as much more as they should agree upon, and pile it on his mill dock conveniently for shipping, at $3 per thousand feet, until all the pine timber on the lands should be cut off,—provided such amount of lumber should be furnished each year, and the logs delivered at the expense of the firm at the mill boom in Grand Haven. The sawing was to be done as promptly as possible and not delayed for other sawing. Roberts agreed to allow the firm the use of his booming grounds until the timber was exhausted.

The firm agreed to furnish the logs until used up, and pay the price, and share the expense of tallying at the mill,—the firm paying entirely for all tallying elsewhere. Neither party was to be liable for damages in case of low water or other contingency preventing the running of logs, or in case of the mill being burned.

This contract concludes as follows: "Said firm of Rob-

erts & Kelsey hereby agrees that the articles of co-partnership entered into on the 17th day of August, 1868, between Richard Roberts and Park B. Kelsey, for lumbering purposes, shall continue and be of full force as therein provided, except so far as the provisions of said articles of co-partnership may be modified, qualified or annulled by this agreement, and by a certain quit claim deed of even date herewith, made by said Park B. Kelsey to said Richard Roberts."

Roberts died July 25, 1875, leaving complainant as his widow, and three children, Elizabeth Blake, Rebecca Bailey, and Mary Ann Roberts, who are not parties to this bill.

The bill was filed December 1, 1875, and shows that on the death of Roberts, Kelsey assumed control of the firm assets as surviving partner, and sets forth some charges of misconduct which are not now insisted on. It avers there is an amount of about fifteen millions of timber remaining uncut, and that the principal inducement of the last agreement was that Roberts might obtain the contract of sawing it all; but that Kelsey refuses to furnish the logs, and unless compelled to do so, the mill will be useless or nearly so.

The purpose of the bill—aside from certain matters not now insisted on—was by means of a receiver or otherwise to have the lumber furnished to the mill according to the contract—and for general relief under which compensation is asked for the damage sustained by non-fulfilment.

The bill was dismissed and complainant appeals.

We can see no foundation for any such relief. The agreement of 1872 purports to be, and was in fact a change in the partnership articles, whereby the firm ceased to own the mill and agreed to employ Roberts to do the sawing at a price fixed, instead of doing it as before on the firm account at the partnership mill. He paid Kelsey six thousand dollars for his interest in the mill. Thereafter the only firm business was in getting out the logs and selling the lumber. But Roberts was

still the general financial manager. He determined the manner of sawing and attended to the sale of lumber and chiefly controlled the funds, while Kelsey was to get out the logs.

The services of Roberts were as important to Kelsey as the other business was to Roberts. There was nothing in the articles of partnership which in our opinion was intended to continue the firm beyond the life of either member. The death of either made the same change in the condition of affairs that it would usually produce in other cases. Unless the articles contain some special provision for continuance after the death of one partner, it operates as a matter of course to dissolve the firm, and to leave its settlement in the hands of the survivor. Kelsey would not be in the same position if compelled to trust or deal with the present owners of the mill, and they in turn could not occupy the position of Roberts. The contract cannot be regarded as still in force without putting both parties under conditions never contemplated by any one.

The agreement is not one which could under any circumstances be specifically enforced, because no court of equity has any means of seeing to its execution, or of supplying the judgment of the deceased partner and his business faculty. A contract depending so largely on personal confidence would become grossly unjust when that confidence became impossible.

We do not think it necessary to consider whether if the mill-owner had originally been a stranger, the dissolution of the firm on the one hand, or his death on the other would have interposed obstacles beyond remedy. It is evident enough that there could be no specific performance of such a contract.

If complainant is entitled to manage the mill,—which is not very evident,—she cannot perform for Kelsey what her husband could have done. His death rendered the performance of very important conditions impossible. We cannot conceive of any possible reason for holding

that the partnership business is to be continued, or his death not regarded as dissolving the firm for all purposes.

The only remedy which complainant could have against Kelsey would be for an accounting at the proper season. He cannot be compelled to do any more than settle up the business and divide the proceeds, when ready for distribution.

The present bill having been framed with a view in part of obtaining an account—although no case is made out for that purpose, the decree below dismissing the bill will be affirmed without prejudice to any future bill to obtain a partnership settlement if it should become necessary.

The decree is affirmed with costs.

The other Justices concurred.