## WILFORD BOURGET v. ANDREW MONROE.

*Contract for support—Mutuality—Specific performance—Damages—Surviving action.*

1. A court of equity cannot enforce a contract specifically unless it can be done mutually and completely and so as to secure substantially beyond question all that the parties contemplate.

2. A man agreed to let his married daughter and her family live on a lot he owned if she would support him during his life, and also promised that the land should be hers after his death. She and her children died in his lifetime, however, and the old man thereupon turned her husband off the premises. The husband as sole heir to his wife and children professed his readiness to fulfil the agreement to support him, and demanded specific performance or compensation. *Held,* that his bill therefor would not lie.

3. A decree for specific performance is impracticable where the contract is for the support of a parent in consideration of his devising his land to the child, and involves continuous duties that a court of equity cannot regulate, and a conveyance by will, which no court can compel.

4. A wife's sole contract to support her father in her family, while living with her husband, if valid at all, cannot, upon her death, bind her husband against his will.

5. Damages are not recoverable in equity where no case for equitable relief is made out to which the damages would be applicable or subsidiary.

6. Personal actions do not descend to heirs, and they cannot sue on a contract made by their ancestor unless they have a cause of action on covenants running with land.

Appeal from the Superior Court of Detroit. (Chipman, J.) November 13.—November 19.

SPECIFIC PERFORMANCE. Defendant appeals. Reversed.

*Powell & Dorland* and *John G. Hawley* for complainant.

*Geo. S. Hosmer* (*Dickinson, Thurber & Hosmer*) cited against the relief prayed, *Clinton v. Fly* 10 Me. 292; *Eastman v. Batchelder* 36 N. H. 141; *Bethlehem v. Annis* 40 N. H. 34; *Flanders v. Lamphear* 9 N. H. 201; *Flood v. Finlay* 2 Ball & B. 9.

CAMPBELL, J.   This is a bill filed to obtain a specific performance or else compensation for the support of defendant. A general demurrer was put in, but overruled, and defendant appeals.

The bill alleges that in May, 1879, defendant entered into an agreement with his daughter, Josephine Bourget, complainant's wife, which it is alleged was in substance that she should support and maintain him, except as to clothing, during his life, and that in consideration thereof he should allow her and her family to possess and reside upon a certain lot named, in Detroit, belonging to defendant, and that it should be hers absolutely after his death; that in pursuance of this agreement till her death, said Josephine supported and maintained defendant, and resided on the land; and that pursuant to the agreement defendant and wife made a deed to her in 1881.   The bill does not aver the contents of this deed or that it was delivered.   If it had been, the bill would be improper, because the contract would have been fulfilled, and the courts of law could secure the possession of the land if disputed.

The bill further avers that Mrs. Bourget spent $147 in improvements, and labor to the amount of $75; and that defendant's support and maintenance was worth $1300; that Josephine Bourget died intestate in August, 1883, leaving two little children, one of whom died about a fortnight after, and the other, who inherited his share, in October, 1884, leaving his father, the complainant, his sole heir; that defendant, immediately after his daughter's death, left the house and shut it up and excluded complainant, and on the day she died and before her death, repudiated the alleged agreement, which complainant avers his readiness to perform.

Complainant fears defendant will dispose of the property, which will make a recovery difficult, and asks an injunction and specific performance, or compensation.

We can see no foundation for jurisdiction in this case.   If Josephine Bourget were living, and had filed this bill herself, a decree of specific performance would, if made, involve continuous duties on her part, including all those household

cares and attentions essential to the decent care of parents by
their children, which could not be constantly regulated by any
process within the power of a court of equity, and which, if
enforced unwillingly, would be destitute of the affection and
confidence which are the chief value of such relations. The
duties on defendant's part would also be continuous and
dependent on good treatment, and the conveyance must either
be made by will, which no court can compel a man to make,
or by deed from his heirs. In other words, the performance
could not be enforced mutually or at all, and is impracticable
within any rule of equity.

The impropriety of interference in equity in such cases
has been so uniformly recognized by this Court that it is not
necessary to discuss it at length. A court of equity cannot
enforce a contract specifically unless it can be done mutually
and completely, and so as to secure substantially beyond
question all that the parties contemplate. If this is imprac-
ticable, the remedy, if any exists, is to be found elsewhere.
*Buck v. Smith* 29 Mich. 166; *Blanchard v. Detroit, L. &
L. M. R. R. Co.* 31 Mich. 52; *Rust v. Conrad* 47 Mich. 449;
*Bumpus v. Bumpus* 53 Mich. 346; *Wright v. Wright* 31
Mich. 380; *Roberts v. Kelsey* 38 Mich. 602.

The case of *Bumpus v. Bumpus*, so far as practicability is
concerned, is a much stronger case in its facts than the pres-
ent one, and the doctrine was there laid down that courts
should not interfere in such cases. The case of *Chipman v.
Thompson* Walk. Ch. 405, which is relied on by complain-
ant, has no analogy to the present one. In that case full
papers were made out, and a deed deposited in escrow and
referred to in the written articles. The parties to be supported
had both died, and the purpose of the bill was to compel
delivery of the conveyance by the depositary. There was
nothing difficult in the duties to be performed, and no delay
required to determine whether the parties to the original agree-
ment would perform their obligations.

In the present case the want of mutuality is especially
manifest, apart from the other difficulties. It was never con-
templated that the parent should have to look to any one but

his daughter for the care which he needed. Her death made the performance impossible. Beyond this, it cannot be claimed that any duty devolved on her infant children, or on complainant, which could be enforced by legal proceedings. Assuming that this future possibility was of such a nature that it passed by descent to complainant (which it would be difficult to maintain when the conditions are personal), it cannot be said that he could be bound unless he chose to accept an estate so burdened; and the mere devolution of the estate could not bring him into such relations of contract that defendant could force him to carry out his wife's obligations. It might be open to some consideration whether a married woman, living with her husband, could make such a sole contract as would bring into the family, for continued maintenance, and for a price to be paid to herself alone, strangers to the household.

It is claimed, however, that if specific performance cannot be granted, complainant can have a decree for damages. But there is no authority for holding that equity can grant damages unless there is some case of equitable relief made out also, to which the damages would be applicable or subsidiary.

Moreover, the action for damages for breach of contract, if lying at all, belongs to Mrs. Bourget's estate, and cannot pass by inheritance. Heirs-at-law cannot sue on contract, except where they have a cause of action on covenants running with the land. Personal actions do not descend to heirs.

The decree must be reversed and the bill dismissed with costs of both courts.

MORSE, C. J. and CHAMPLIN, J. concurred. SHERWOOD, J. did not sit in this case.