## APPEAL OF Q. P. AHL.
## APPEAL OF P. A. AHL.

[Q. P. Ahl v. Harrisburg etc. R. Co. et. al.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF CUMBERLAND COUNTY, IN EQUITY.

Argued May 3, 1889—Decided October 21, 1889.

·[To be reported.]

1. The assignment of a contract to construct a railroad, without consideration from the assignee, but made to facilitate the completion of the contract and to secure at the earliest moment the entire sum to be paid

Statement of Facts.

under it, for the benefit of the assignor's creditors, is not fraudulent and void.

2. At all events, even if the assignment were intended to hinder and delay the creditors of the assignor, and therefore fraudulent, the assignee, being a party to the intent, may not complain in equity, after the money payable under the contract has been paid over, on completion, according to the terms of the assignment.

3. It is a general rule that when a court of equity has once obtained jurisdiction of a cause of action, for one purpose, it may retain it for purposes of equitable relief not specifically prayed for in the bill, but disclosed by the evidence: McGowin v. Remington, 12 Pa. 56; Allison's App., 77 Pa. 221; Adams's App., 113 Pa. 449.

4. But if, after hearing, the master and court have found against the plaintiff upon every averment in his bill, the disclosure by the evidence of some other demand capable of being enforced at law, and not within the jurisdiction of equity, will not give to the court jurisdiction to proceed upon that cause of action.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 53 July Term 1889 and 438 January Term 1889, Sup. Ct.; court below, No. 3 August Term 1884, C. P. in Equity.

On May 6, 1884, Q. P. Ahl filed a bill in equity against the Harrisburg & Potomac R. Co., T. W. Ahl, C. W. Ahl and P. A. Ahl, in substance averring:

That P. A. Ahl, had contracted to build the Harrisburg & Potomac Railroad for, inter alia, $23,000 per mile, $18,000 in first mortgage bonds and $5,000 in stock.

That prior to October 11, 1877, he sub-let 4 miles and 942 feet between Langsdorf station and Jacksonville, upon which some work had been done, to Q. P. Ahl and T. W. Ahl, who were to receive the $18,000 first mortgage bonds and $5,000 in stock per mile. That the sub-letting was reported to the board of directors of the railroad October 11, 1877, and was approved by it. That on May 6, 1878, the chief engineer reported to the board of directors the completion of the sub-let portion and suggested the release of contractors and the reception of the section. That this report was approved, and the board passed a resolution authorizing the Provident Life and Trust Co., of Philadelphia, trustee in the first mortgage, to certify $75,200 of first mortgage bonds, deliver the same to the treasurer of the company, to be paid over to the "contractors," T. W. Ahl

and Q. P. Ahl, sub-contractors under P. A. Ahl, being $18,000 per mile for each mile between Langsdorf's station and Jacksonville. That the plaintiff expended a large sum of money in this construction, but was ignorant what T. W. Ahl had invested; he had never been able to effect a settlement with him nor to ascertain what portion of the bonds he was entitled to receive, under the sub-letting, in which he was a partner of T. W. Ahl. That he was informed and believed that P. A. Ahl received some of said bonds which passed to C. W. Ahl. That C. W. Ahl received a large portion of them, if not all, knowing that they belonged to the plaintiff and his partner, T. W. Ahl. That T. W. Ahl, individually, or as treasurer of the railroad, received a portion of them and delivered them to C. W. Ahl. The prayers of the bill were:

1. That the said partnership between plaintiff and T. W. Ahl be dissolved and an account taken and T. W. Ahl be required to pay to plaintiff the amount due him.

2. That it be determined what amount of said bonds plaintiff was entitled to receive under his partnership, and that the railroad company be required to deliver to him said portion of bonds.

3. That it be determined that Peter A. Ahl was not entitled to any of said bonds, but that they all belonged to plaintiff and T. W. Ahl, as sub-contractors.

4. That C. W. Ahl, P. A. Ahl and T. W. Ahl be required to make known what portion of said bonds each received, how and when received, what they did with them, and to deliver to plaintiff any now in their possession.

5. Other and further relief.

The defendants filed answers denying the averments of the bill, and the right of the plaintiff to the relief prayed for.

The case having been put at issue, it was referred to *Mr. C. P. Humrich*, as examiner and master, who filed a report finding for the defendants upon every issue raised by the bill, as more fully shown in the opinion of the Supreme Court. The master further found that Q. P. Ahl was induced to advance and did advance money for procuring materials and for the payment of laborers on the railroad; that this was advanced at the request and for the benefit of P. A. Ahl, the contractor, and had never been repaid by him, and that the plaintiff therefore had a just and equitable demand against P. A. Ahl, for

$8,558.69. No averment with reference to the subject matter of this claim was made in the bill, but the master recommended a final decree in favor of plaintiff for the sum of $8,558.69 against P. A. Ahl, and the dismissal of the bill as to the other defendants.

Exceptions were filed to the master's report by Q. P. Ahl, plaintiff, and by P. A. Ahl, one of the defendants, the nature of which exceptions appears from the opinion of the court by BARNETT, P. J., 41st district, specially presiding, which, after stating the pleadings proceeded:

The controlling question for our decision is whether the conclusion reached by the master is right, under the pleadings and evidence; and if so, it should be sustained, even if some of the reasons given for it might be opened to objection.

If the decree recommended by the learned master should be sustained in other respects, we do not understand that defendants object to the particular amount found to be owing from P. A. Ahl to the plaintiff. Nor do the plaintiff's exceptions complain of the amount found for the plaintiff's expenditures. That amount may be taken to be right.

The partnership is denied by T. W. Ahl, in his answer to the bill and in his testimony before the master. It is sought to overcome this by the testimony of the plaintiff and by other circumstances. These other circumstances might be sufficient to establish a partnership as to third parties. But in the absence of sufficient evidence tending to show either a written or verbal agreement of partnership, any consultation between the alleged partners or joint action in regard to the completion of the road, any office books or bank accounts, or other indicia of an intention to form a partnership between themselves, we think the finding of the learned master in this respect is fully justified by the evidence.

In regard to the purpose of the sub-letting, two views are presented. The one taken by the plaintiff's counsel is, that it was for the benefit of P. A. Ahl, and to hinder and delay his creditors. If his be the correct view, it is manifest that some, at least, of his exceptions are well taken. There is a plain distinction between an illegal contract, and one simply fraudulent as to creditors. The former, whether executory or ex-

ecuted, is absolutely void. If a note or bond had been given for the commission of a crime, no recovery can be had thereon. The maker may show the nature of the contract, and because the public are interested, the law will not help the criminal to obtain his reward. If a judgment has been confessed, the defendant may have it opened to show the illegal consideration, and have it declared void. The cases of Ham v. Smith, 87 Pa. 63; National Bank v. Kirk, 90 Pa. 49, and Bredin's App., 92 Pa. 241, are authorities for this doctrine.

But if the contract be merely fraudulent as to creditors, it is nevertheless good between the parties. Why should it not be? Neither of them is defrauded, because both of them are fully acquainted with the subject matter and purpose of the contract, and mutually consent with full knowledge. The public is without interest in the matter, and the law will not assist either party. If the contract be executory, the law will not enforce it; if executed, it will not relieve. And yet, *because* the public has no interest, the law will undertake no search after concealed fraud. And if either party can present his case without revealing the fraud, he may invoke the same law as an honest litigant. The authorities for this are numerous, and are abundantly cited in the plaintiff's brief.

The other view, taken by the master, is, that the sub-letting was for the benefit of the railroad company, in order that its road might be finished without vexatious delay. The company having doubtless learned from unpleasant experience, that the original contractor was financially unable to complete his contract, it was mutually arranged between them that it should be otherwise completed for the benefit of both. P. A. Ahl having obtained the consent of his nephews to finish his work, the company approved of the plan, and he sub-let to them his contract. And in this arrangement fraud was neither intended, nor existed, in reference to creditors.

If the company agreed to relieve the contractor and accept others to perform his work for the same compensation, it is not readily perceived what fraud has been done. The property of P. A. Ahl, subject to levy and sale, could not legally be transferred to the injury of creditors; but he was not bound to labor or continue in business for their benefit. If the sub-contractors were willing to take up and perform his work in

their own names, although the reason for it was that he was otherwise liable to be harassed by his creditors; if they made themselves responsible for the iron and ties, and paid the workmen, and agreed that nevertheless he should receive the stock and bonds when the work was taken off their hands; if nothing was taken or concealed from his creditors that was liable to their executions, it does not appear in what way they were defrauded. When a contract will admit of two constructions, one consistent with honesty, and the other, not, the former will be presumed. It does not clearly appear that any property of P. A. Ahl, liable to seizure, was tranferred to the sub-contractors. It is true, he testifies that when the sub-letting was done " the ties were on the road or secured, and 125 tons of rails on the line of the road." But there is no evidence of any sale or transfer of this material; and the testimony of T. W. Ahl that, "I surrendered about $7,000 of material for which I had given my obligation to creditors of P. A. & D. V. Ahl; that material was put in these four miles;" would seem to indicate that creditors had received other security in lieu of this material, and that the presumption of honesty was not overthrown by the facts. We are unable, therefore, to say that the learned master's view of this sub-contract is not warranted by the evidence.

But it seems to us not very important, in determining the rights of these litigants, whether this sub-letting was fraudulent or otherwise. We think the real foundation of the plaintiff's claim consists in the written contract marked No. 42, and the action taken by the railroad company in their approval thereof, their acceptance of the completed work, and in their resolution to issue the bonds necessary for payment. And when these things have been put in evidence, the claim is established without exciting even a suspicion of fraud. The defence to the claim is equally legitimate. It consists in the fact that the bonds were issued and delivered to the plaintiff, and in the evidence tending to prove that he handed them over to P. A. Ahl personally, as the property of the latter, and not to the president of the company, with a request for certification. In short, the plaintiff's claim is practically on an obligation, to which the defence is actual payment.

The learned master is of opinion that the evidence is suffi-

cient to amount to proof that the bonds were delivered to the plaintiff, who delivered them in turn to P. A. Ahl, as the property of the latter. His 5th finding is: "That the railroad company discharged their duty in the premises, and that the bonds were delivered by the plaintiff to P. A. Ahl, who was entitled to them as the contractor for building the road." If the bonds were voluntarily delivered by the plaintiff to P. A. Ahl, with the intention of vesting title in the latter, it is immaterial in what capacity he received them, whether as contractor for the road, or donee of the sub-contractors. In either event, the plaintiff would be without legal claim against the railroad company, or against P. A. Ahl. After careful consideration we are unable to say that the evidence fails to support the finding of the master.

If the bonds were so delivered to Peter A. Ahl as to vest title in him, it is immaterial to this investigation what became of them afterwards. Under such circumstances, C. W. Ahl incurred no liability to the plaintiff; and the question of the competency of witness as affected by his death need not be discussed.

If now, the plaintiff was not a partner of T. W. Ahl, and has no title to the railroad company's bonds, this whole contest might end here, under the pleadings and the prayers for relief. But the court has jurisdiction by reason of the subject matter set forth in the bill: Adams's App., 113 Pa. 449. And where a court has obtained jurisdiction for one purpose, it may retain it generally for relief: Allison's App., 77 Pa. 227, and authorities there cited. "When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy, or of distinct, yet connected topics of dispute. If the jurisdiction once attaches from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors multiplicity of suits:" BELL, J., in McGowin v. Remington, 12 Pa. 63; Wilhelm's App., 79 Pa. 120. Under the prayer for general relief, the plaintiff is entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for: Slemmer's App., 58 Pa. 167.

We are of opinion that the learned master reached a right conclusion, and that his report should be confirmed and his decree adopted, and the same is hereby done accordingly.

And now, to wit, March 31, 1888: The exceptions to the report of the master are hereby overruled. And it is now ordered, adjudged and decreed: That Peter A. Ahl, one of the defendants, shall pay to Q. P. Ahl, the plaintiff, the sum of $8,558.69, with interest thereon from March 13, 1888. And that he shall also pay the sum of $582.66, the costs including the master's fee, to the several parties entitled thereto, as per the schedule in which they are taxed, attached to the master's report. And as to the other defendants the bill is hereby dismissed.

Q. P. Ahl thereupon took the appeal to No. 53 July Term 1889, specifying that the court erred in dismissing his exceptions to the master's report.

P. A. Ahl took the appeal to No. 438 January Term 1889, specifying that the court erred in dismissing his exceptions to the master's report.

*Mr. John Hays* (with him *Mr. R. M. Henderson* and *Mr. J. W. Henderson*), for Q. P. Ahl:

1. Q. P. Ahl was not a party to P. A. Ahl's fraudulent intent to defeat the claims of his creditors, and he should not be prejudiced thereby: Reehling v. Byers, 94 Pa. 216; Foster v. Walton, 5 W. 378. Even if Q. P. Ahl had knowledge of the intended fraud upon creditors, the contract was good as against P. A. Ahl and could have been enforced. "A contract, which is fraudulent as to creditors, by reason of the statute of 13th Elizabeth, is binding upon the parties themselves, and the one may use it against the other for any purpose whatever:" Sherk v. Endress, 3 W. & S. 255; Blystone v. Blystone, 51 Pa. 373; Sickman v. Lapsley, 13 S. & R. 225; Zuver v. Clark, 104 Pa. 225; Evans v. Dravo, 24 Pa. 62; Bonesteel v. Sullivan, 104 Pa. 9; Gill v. Henry, 95 Pa. 388; Bredin's App., 92 Pa. 241; Murphy v. Hubert, 16 Pa. 50.

2. The facts charged in the bill showed that equity had jurisdiction. The bill was not demurrable nor demurred to. Thus far, Adams's App., 113 Pa. 449, rules the case. "When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy, or of distinct yet connected topics of dispute. If the jurisdiction once attaches, from the

nature of one of the subjects of contest, it may embrace all of them, for equity abhors multiplicity of suits:" McGowin v. Remington, 12 Pa. 63; Thomas v. Oakley, 18 Ves. 184; Souder's App., 57 Pa. 498; Coleman's App., 75 Pa. 441; Masson's App., 70 Pa. 26; Allison's App., 77 Pa. 221; Wilhelm's App., 79 Pa. 120; Danzeisen's App., 73 Pa. 65; Koch's App., 93 Pa. 434.

*Mr. S. Hepburn, Jr.* (with him *Mr. E. W. Biddle*), for P. A. Ahl:

The false averment of an essential jurisdictional fact, does not give to a court of equity jurisdiction over all matters and disputes between a plaintiff and such persons as he may choose to make defendants: Koch's App., 93 Pa. 434; 1 Pomeroy, Eq. J., 247; Rule 1 in note. The cases cited by the court below do not contain a single expression which justifies the decree.

Q. P. AHL'S APPEAL.

OPINION, MR. JUSTICE WILLIAMS:

The questions involved in this controversy are questions of fact. We learn from the report of the master that the Harrisburg & Potomac Railroad Co. was organized, and the construction of its road undertaken, largely through the instrumentality of D. V. Ahl and P. A. Ahl, his brother and business partner. In 1877, D. V. Ahl was president of the company, and P. A. Ahl was the contractor, not only for the grading, but for furnishing and laying the ties and rails. He had just finished one section, and nearly completed another, extending from Langsdorf to Jacksonville, a distance of four miles, when serious financial embarrassment overtook him. D. V. Ahl appears to have been interested with, or responsible for the performance of his brother, and to have been involved in the same difficulties. They had invested their money and pledged their credit in the construction of the road until they feared to go further. They sought the advice of family friends, who were also interested in the early completion of the railroad; and the conclusion was reached that the further prosecution of the work under the contract should be conducted in the names of Q. P. Ahl and T. W. Ahl, and that D. V. Ahl and P. A. Ahl and the firm of P. A. Ahl & Bro. should put their

effects into the hands of C. W. Ahl for the payment of their debts. An assignment of the contract was accordingly made to Q. P. & T. W. Ahl, who were accepted by the railroad company, and who proceeded to complete the section in their own names. An assignment was also made by D. V. & P. A. Ahl and P. A. Ahl & Bro. to C. W. Ahl, for the purpose of paying their debts. Neither Q. P. Ahl nor T. W Ahl paid anything for the assignment of the contract to them, but took possession of the grading and the materials, and finished the section. The work was accepted by the railroad company, and paid for in stock and bonds, in accordance with the original contract. The stock and bonds were turned over to C. W. Ahl, the assignee of D. V. and P. A. Ahl, and appropriated by him to the payment of their debts, in accordance with the understanding had when they surrendered their property to him.

Six years after the completion of the section, and the delivery of the stock and bonds in payment therefor, this bill was filed, setting out that the plaintiff and T. W. Ahl were partners in the work of completing the section, the contract for which had been assigned to them; that the money used by the firm was advanced by the plaintiff; that the accounts of the firm were still unsettled; that the bonds and stock issued by the railroad company in payment for the construction of the road between Langsdorf and Jacksonville belonged to him, but were in the hands of P. A. Ahl and C. W. Ahl; that they had been received with full notice of his title, and used by C. W. Ahl and P. A. Ahl for the payment of the debts of P. A. Ahl & Bro., or some other purpose. Relief was prayed for against each of the defendants separately,—against T. W. Ahl for a dissolution of the alleged partnership, for discovery, and an account; against the Harrisburg & Potomac Railroad Co. for an ascertainment of the amount of bonds to which the plaintiff is entitled in payment for the section between Langsdorf and Jacksonville, and for the delivery of the same to him; against P. A. Ahl for discovery and account as to the bonds received by him applicable to the work on the said section; against C. W. Ahl for discovery and account as to the bonds received by him applicable to the same section. The defendants answered separately. They denied that a partnership existed between the plaintiff and T. W. Ahl in the work done on the railroad.

They denied that Q. P. and T. W. Ahl, or either of them, took any title under the assignment made by P. A. Ahl, and alleged that the work was agreed to be done, and was in fact done, for P. A. Ahl, and under his directions. They further alleged that the bonds and stock had been issued upon the acceptance of the section by the railroad company to the plaintiff himself, and by him turned over voluntarily to P. A. Ahl, in accordance. with the arrangement made when the contract was transferred; and that P. A. Ahl had delivered them to C. W. Ahl for sale and appropriation upon the debts of himself and his firm, and that such an appropriation had been in fact made by C. W. Ahl. Separate issues of fact were thus raised between the plaintiff and each of the defendants. These were heard by a master, who found for the defendants upon every issue raised. These findings were examined by the learned judge of the court below on exceptions, and after such examination they were concurred in. The facts, therefore, may be regarded as settled; but we have looked into the testimony to see if any plain mistake has been made by the master and the court below, and we are satisfied that the evidence fully justifies the findings. There was competent and sufficient evidence before the master to sustain each of them; and his findings, and the decree of the court based on them, must be regarded as settling the facts.

The legal questions involved are equally free from difficulty. The master having found that the alleged partnership with T. W. Ahl never existed, the dismissal of the bill as to him is the necessary consequence. The finding that the railroad company issued the bonds and stock due upon the completion of the section between Langsdorf and Jacksonville, at the proper time, and delivered them into the plaintiff's own hands, entitled the company to a decree in its favor. The finding that P. A. Ahl received such bonds as came to his hands from the plaintiff in accordance with an arrangement that he was to receive them, because entitled to them, was fatal to the plaintiff's claim for relief against him. As to C. W. Ahl, the master finds that the bonds that came to his hands were delivered by P. A. Ahl to him for the payment of debts, and were actually so used, and that the plaintiff had no title to them whatever. This sweeps away the plaintiff's case as to this defendant.

Nothing remains, therefore, of the case made in the bill against either one of the defendants.

It has been urged in argument, that, if the plaintiff took nothing under the assignment of the construction contract to him, then the arrangement should be held to be void as a device to hinder and delay creditors of P. A. Ahl. On this subject the master finds that the transfer was intended to facilitate the completion of the section, and thereby to secure at the earliest moment practicable the entire sum to be paid under the contract for the benefit of creditors. It was therefore not a fraud in fact, and it cannot be held to be a fraud in law, upon the facts presented by the master's report. But, suppose the fact to be, as is alleged, that the transfer from P. A. Ahl to the plaintiff was intended to hinder and delay the creditors of P. A. Ahl, and that it was therefore void as to the persons intended to be defrauded, how would Q. P. Ahl be helped by such a conclusion? He is a party to the fraudulent transfer, a particeps criminis. The proceeds of the fraudulent transaction are out of his hands, and he asks a chancellor to take them from the hands of his co-conspirator, and place them in his own. He is not prompt and eager to seek relief, but waits for six years. He states a cause of action in his bill, every fact of which is found against him. He then says, in effect, "If my contract is not what I have claimed it to be, a valid transfer to me of the contract with the railroad company, it is a fraud on the creditors of P. A. Ahl;" and he asks a decree in his favor for the bonds, not because they belong to him, but because the contract upon which his title depends was fraudulent and void. This is not the sort of claim to relief in equity which is calculated to move the conscience of a chancellor. The plaintiff's case fails on the facts on which he rested it in his bill, and it fails on the proposition just considered, that the transfer to him was intended to hinder and delay the creditors of P. A. Ahl; nevertheless the master recommended, and the court below made, a decree in his favor for a sum of money due from P. A. Ahl to him. Whatever reason P. A. Ahl may have to complain of this decree, the appellant certainly has none, and his

Appeal is now dismissed, at his costs.

P. A. AHL'S APPEAL.

OPINION, MR. JUSTICE WILLIAMS:

This appeal is from the same decree as that of Q. P. Ahl, which we have just considered and dismissed, and raises a question of jurisdiction.

The bill was against P. A. Ahl, T. W. Ahl, C. W. Ahl, and the Harrisburg & Potomac Railroad Company. The master found against the plaintiff, Q. P. Ahl, on every fact alleged in the bill as the basis of the relief prayed for against each of the defendants, and recommended that the bill be dismissed as to all of them except P. A. Ahl, the appellant. It would have been dismissed as to him also, but for the fact that the evidence disclosed a circumstance not averred in the bill, viz., that he was indebted to Q. P. Ahl. This indebtedness was for loans and advances made to aid in completing the section between Langsdorf and Jacksonville, and amounted to $5,302.48. The interest was computed at $3,256.21, making an aggregate of $8,558.69. For this sum the master recommended a decree, which was made by the court, and from which this appeal was taken.

This decree was thought by the master and the court below to be justified by the familiar rule that, where a court of equity has once obtained jurisdiction of a cause of action, it may retain it for purposes of equitable relief not prayed for in the bill, but disclosed by the evidence: Allison's App., 77 Pa. 221. Whether the decree made in this case is justified by the rule invoked, is the only question presented on this record. It will be noticed that the rule is predicated of cases in which the court has acquired jurisdiction. If the court has no jurisdiction, it can make no decree. Mere service of process subjects the defendant to the jurisdiction of the court for certain preliminary and special purposes; but, unless the bill discloses a cause of action within the cognizance of a court of equity, the defendant must be allowed to depart the court. The question whether the plaintiff's cause of action is one that entitles him to be heard in a court of equity, must be determined, in the first instance, from the face of his bill. If the facts stated therein are such as entitle him to equitable relief prima facie, the defendant cannot oust the jurisdiction by his answer denying the facts stated in the bill, but such answer raises an issue

or issues to be decided upon hearing. The question of jurisdiction of the cause of action must be determined, in the first instance, by an examination of the bill. If this discloses a case for equitable intervention, the defendant must answer and enter upon his defence. After hearing, the question of jurisdiction depends on the proofs: Adams's Appeal, 113 Pa. 449.

In the case now before us, the bill made a case against each of the defendants. When the proofs were heard, the plaintiff failed to sustain the averments of the bill against either of the defendants, and the master found against him on every question of fact raised. He had alleged a partnership with T. W. Ahl, and prayed for dissolution and an account. The master found that no partnership existed, and that the bill ought to be dismissed as to T. W. Ahl. The account prayed for against P. A. Ahl was refused, because the master found that the bonds were delivered to him by the plaintiff with full knowledge of the use to which he was to put them. The relief asked against C. W. Ahl was refused for the same reason, and because the bonds were put in his possession pursuant to a voluntary assignment for the benefit of his creditors made by P. A. Ahl to him. As to the railroad company, the bill was dismissed because it appeared that the company had settled with the plaintiff, and delivered to him the bonds necessary to pay for the work and materials on the whole section, at the proper time, and owed nothing to him or to P. A. Ahl whatever. Not a single jurisdictional fact or relation averred in the bill was found to have any existence. How, then, had the court jurisdiction? The case made in the bill was sufficient until hearing, but, on hearing, it was swept away. He came into court and said: "I have a partner from whom I desire to be freed, and to have an account. My bonds are in the hands of those who have no right to them, and they fraudulently withhold them from me." The court hears the proofs, and finds every statement to be false. He has no partner, he had no bonds, and the bonds he describes are found to belong to others, and to be in the proper custody. Nothing remains to be done, after the suitor's case is gone, except to send him out of court.

It will sometimes happen that the precise form of relief prayed for is, upon a view of the facts as presented in the evi-

dence, either impossible or inapplicable ; and a court of equity will in that case extend such other form of relief as may be appropriate on a consideration of the case presented. This is done to prevent a failure of justice from defective pleading, and to prevent a multiplicity of actions for the same act or omission. Such was the case in Masson's Appeal, 70 Pa. 26. The relief asked for in the bill was an injunction to prevent the use of a party-wall by the defendant. On the hearing, the plaintiff showed his title to relief, but the proofs also showed that the defendant had already built against the wall. Upon this state of facts, the court, to prevent a failure of justice, and to avoid further litigation, ascertained the compensation which should be made to the plaintiff for the use of the wall, and made a decree accordingly. In McGowin v. Remington, 12 Pa. 56, the plaintiff asked for a decree for the delivery of certain maps, papers, and surveyor's instruments. It was objected that, as to the instruments, an action of trover or replevin would afford an adequate remedy for their recovery or their value ; but as these were left with the maps and papers, and under the same arrangement, it was held to be unnecessary for the plaintiff to divide his demand, and proceed for part of it at law; and his bill was sustained because, as to the maps and papers, his right to relief in equity was clear. The court, having jurisdiction as to these, might proceed to dispose of the whole transaction. If the master had found that no maps or papers or instruments had been left with the defendant, and the plaintiff had shown title to none, it is not to be doubted that the bill would have been dismissed. The court would not have retained it to settle some other transaction between the parties not a subject of equitable cognizance. In Danzeisen's Appeal, 73 Pa. 65, the plaintiff proved the facts which he had alleged in his bill, but he had mistaken their effect. He charged that they established a trust. This court held that they created a mortgage, instead of a trust; but, as they showed a cause of action within the jurisdiction of a court of equity, the court sustained the bill, and granted such relief as was appropriate to the case made by the proofs. But if, after hearing, the master had found against the plaintiff upon every averment in his bill, the jurisdiction of the court would have been ousted, and the bill would have been dismissed. The

rule is stated in Slemmer's Appeal, 58 Pa. 155, to be, that where the plaintiff shows a right to relief in equity, he is entitled, under the prayer for general relief, to such decree as is agreeable to the case as presented, though it may be different from that asked for in his bill. But, if he shows no right to relief in. equity, his case has nothing on which to stand, and it must fail. The existence of some other demand capable of being enforced at law, and not within the jurisdiction of equity, cannot help it to stand. The fundamental necessity—a case within the jurisdiction of the court—is not met, and the defendant has a right to ask to be allowed to depart the court.

Applying this principle to the case in hand disposes of the decree made in the court below. The plaintiff stated a case in his bill that was cognizable in equity, but he failed to prove it. The master found against him on every averment on which his right to equitable relief rested. He was shown to be without equity, and for that reason the court was without jurisdiction or power to proceed. When it reached after a cause of action belonging to a court of law, and not even suggested in the plaintiff's bill, it was not adapting relief to a case properly before it, but usurping the jurisdiction of a court of law. For the reasons now given

> The decree is reversed, and the bill dismissed, at the cost of the appellee.