# Bevan et al. v. Local Branch No. 898, U. M. W. of A. et al.

*James P. Harris*, for plaintiffs.
*Roger Dever*, for defendants.

VALENTINE, J., December 17, 1934.—

*Statement of pleadings and issue raised*

On September 8, 1933, plaintiffs filed their bill in equity praying: (1) For a preliminary injunction restraining the officers and members of Local Union No. 898 of the United Mine Workers of America from unjust discrimination against, and malicious interference with, plaintiffs working with the Susquehanna Collieries Company; and (2) that the chancellor assess the damages alleged to have been sustained by plaintiffs.

On October 5, 1933, defendants filed their answer.

After due hearing the prayer for a preliminary injunction was, on October 30, 1933, refused.

The issue now raised is the right of the plaintiffs to have a court of equity assess damages claimed to have been sustained by them because of the loss of their positions with the Susquehanna Collieries Company, alleged to have been caused by defendants' malicious interference with plaintiffs' right to work for said company.

*Findings of fact*

1. The plaintiffs and the individual defendants are members of Local Union No. 898 of the United Mine

Workers of America which is a subordinate branch of District No. 1, United Mine Workers of America and of the International Union United Mine Workers of America. The United Mine Workers of America is governed by a written constitution and bylaws.

2. Local Union No. 898 is a fraternal organization organized and existing for the purposes, inter alia, of increasing the wages of its members and improving their working conditions.

3. The Susquehanna Collieries Company (employer of the plaintiffs and of the defendants) and the United Mine Workers of America are under contract concerning work and working conditions. Said contract provides, inter alia, as follows:

"(d) At each mine there shall be a grievance committee consisting of not more than three employes, and such committee shall under the terms of this agreement take up for adjustment with the proper officials of the company, all grievances referred to them by employes who have first taken up said grievance with the foreman and failed to effect proper settlement of the same. It is also understood that the member of the Board of Conciliation elected by the mine workers organization, or his representative, may meet with the mine committee and company officials in adjusting disputes. In the event of the mine committee failing to adjust with the company officials any grievance properly referred to them, they may refer the grievance to the members of the Board of Conciliation in their district for adjustment, and in case of their failure to adjust the same they shall refer the grievance to the Board of Conciliation for final settlement, as provided in the award of the Anthracite Coal Strike Commission and the agreements subsequent thereto, and whatever settlement is made shall date from the time the grievance is raised."

4. In May 1933 no. 2 shaft and no. 4 slope of the Susquehanna Collieries Company were closed, as a result of which, approximately 125 employes became idle.

5. Shortly thereafter, four members of the grievance committee, viz., Frank Kaminski, John Peasicki, Alex Armstrong and Andrew Bella, representing Local Union No. 898, called upon John D. Thomas, assistant superintendent of the employer (The Susquehanna Collieries Company) and requested the reëmployment of the men who had been laid off. The committee complained that employes who had been recently engaged and aliens had been retained and old employes laid off. The members of the committee stated to Thomas that the employes would not work unless their complaint was given consideration.

6. On June 5, 1933, the colliery ceased working and the assistant superintendent advised the plaintiffs that the controversy was between "them and the committee."

7. The controversy was finally referred to the conciliation board by virtue of the following communication:

"United Mine Workers of America,
"Local Union No. 898,
"Nanticoke, Pa., June 16th, 1933.
"Mr. John Boylan,
"President, District No. 1,
"United Mine Workers of America:
"We the undersigned Mine Committee of Local Union No. 898, United Mine Workers of America, having failed to settle the labor trouble which has kept us out of work for the past month, with the officials of the Susquehanna Collieries Company, due to old employes being laid idle and new men given work, hereby refer the case to you and Mr. Inglis, Conciliators, under our contract with the coal company to have the case adjusted, and a list of names of men with grievances we could not adjust.
"Yours respectfully,
"Mine Committee Local 898.
" (Seal)          Frank Kaminski, Chairman,
(Local)          John Piasecki, Sec.,
(898)            John Koshinski,
                 Andrew Bella,
                 Alex Armstrong."

8. The conciliators agreed upon terms of settlement as evidenced by the following memorandum:

"(1) Engineer with superintendent to make a study of sections or part of sections to see if sections can be started.

"(2) Questions of floaters to be handled as agreed to with Superintendent Thomas Shifka, and committee.

"(3) Aliens and non-citizens employed since January 1, 1930, at Nos. 5 and 7 collieries shall be removed.

"PROPOSITION OF COMMITTEE:

"A list of men that are removed and also a list of men being placed at work shall be furnished to committees of each local union. The oldest man to get the preference if capable of doing the work."

9. Thereafter the plaintiffs were laid off by their employer and the vacancies thereby created were filled with other members of Local No. 898.

## Discussion

The bill filed by plaintiffs prayed for an injunction restraining defendants and all members of Local Union 898 of the United Mine Workers of America from unjust discrimination against, and malicious interference with, their working and securing work with the Susquehanna Collieries Company; also that the damages alleged to have resulted to the plaintiffs from such conduct be assessed against the defendant union.

After hearing, the preliminary injunction was denied: Bevan et al. v. United Mine Workers of America et al., 28 Luz. L. R. 197; and the case is now before us on final hearing. Plaintiffs' basis for the relief sought is set forth in paragraph 8 of their bill as follows:

"On or about June 26, 1933, the defendants herein by striking and threatening to strike and by intimidation induced and coerced the said Susquehanna Collieries Company to discharge or furlough all of the complainants herein and by said threats and intimidation induced and coerced the said Susquehanna Collieries Company to

employ other members of Local Union No. 898 in place and stead of the complainants and because of said threats and intimidation, complainants lost their jobs with the said Susquehanna Collieries Company, and have been refused employment since on or about the said date and have been prohibited from working for said Susquehanna Collieries Company to the great damage of all of complainants."

Plaintiffs contend that the action of their employer in laying them off resulted from the unlawful and malicious acts of the defendants, and that the employer, rather than face the alternative of a strike, acceded to defendants' demands. On the other hand defendants assert that their complaint that old employes were without employment, and that those who had been recently employed by the defendant retained, was a grievance to be passed upon by the grievance committee and the Conciliation Board; that this was done and that plaintiffs lost their jobs because of the adjudication of the controversy by the Board of Conciliation which adjudication the defendants, as officers and employes of Local Union No. 898, carried out and had executed.

While there may be some doubt whether the nonemployment of members of the union, resulting from industrial conditions, constitutes a grievance within the meaning of that term as used in paragraph "d" of the agreement of May 20, 1912, the officers and members of the union so construed it.

C. J. Golden, Secretary of the Anthracite Conciliation Board, testified that grievances are "disputes with reference to conditions of employment or wages arising under the contracts and the custom between the parties," and that the board had adopted the practice of assuming jurisdiction over disputes between employes arising from the fact that one position was claimed by two individuals.

We do not feel that the language of paragraph "d" is so clear as to warrant us in declaring that the construc-

tion adopted by the officials of the United Mine Workers of America and the Conciliation Board was improper.

The testimony indicates that in carrying out the adjudication of the conciliators, the members of the grievance committee designated the men to be laid off. Indeed this feature of the case furnishes a striking illustration of an employer suffering others to dictate the policy to be pursued by him rather than face the alternative of a strike, but the employer, like defendants, recognized the right of the Conciliation Board to pass upon the controversy.

After being laid off, the plaintiffs submitted their complaint that they had been improperly discriminated against to the courts of the order. The defendants contend that plaintiffs' remedies within the order have not been exhausted. It may be that the tribunals of the organization which passed upon the complaint of the plaintiffs have not done them justice, but whether or not this is so, the court is powerless to aid them: Maloney v. United Mine Workers of America et al., 308 Pa. 251.

The constitution and bylaws of the United Mine Workers of America provide that members are not to be discriminated against because of nationality or non-citizenship, but this provision cannot operate to prevent an employer from preferring citizens of this country to aliens, or giving some consideration to prior length of service, residence or other similar factors. The conclusion that plaintiffs should be laid off was not determined by the officers of the organization to which they belonged, but by the Conciliation Board, a tribunal provided for in the working agreement between the organization in which plaintiffs hold membership and the employer. Obviously the provisions of the constitution and bylaws of the organization are not binding upon the members of the Conciliation Board.

A person who, by means of fraud or intimidation, maliciously procures the breaking of a contract of employment: Bowen v. Hall et al., 6 Q. B. Div. 333; or the

discharge of a person from an employment which, but for wrongful interference, would have continued, is liable for the damages thereby sustained: Perkins v. Pendleton et al., 90 Me. 166, 38 Atl. 96. But the important question in the present case is the nature of the defendants' acts and the means adopted by them. A combination on their part to prevent the employer of the plaintiffs from employing them by threats of a strike would be unlawful: Erdman v. Mitchell, 207 Pa. 79. On the other hand, if the defendants' acts, or threatened acts, were of a character which they had a lawful right to perform or carry out, plaintiffs have no right of action though they have suffered loss: Raycroft v. Tayntor, 68 Vt. 219, 35 Atl. 53.

In Allen v. Flood et al. [1898], A. C. 1, certain boilermakers, members of a trade union, in common employment with the plaintiffs who were shipwrights, members of a rival organization, working on wood, objected to working with the latter for the reason that in a previous employment they had been engaged on iron work contrary to the regulations of the union to which the boilermakers belonged. Allen, representative of the boilermakers, saw the manager of their employer and stated to him that if the shipwrights were not dismissed, the boilermakers would leave their work, or be called out by their union. The shipwrights, who were engaged from day to day, were discharged and brought action against Allen. Their right to recover was denied principally upon the ground that every workman has the right to exercise his own wishes in regard to the person in whose society he will agree or continue to work and, when the employer was confronted with the situation where he would lose the services of either the boilermakers or the shipwrights, he had a right to elect which class of workmen to discharge and, if he elected to discharge the shipwrights, the boilermakers were within their legal rights and no cause of action could be maintained against them.

In Huttley v. Simmons et al. [1898], 1 Q. B. 181, the

plaintiff was a cab driver and the defendants, members of the cab drivers union. All parties to the suit were engaged in business in the same city. The defendants induced a cab proprietor to refuse to engage the plaintiff as cab driver. Had the plaintiff been engaged by the cab proprietor he would have come in competition with the union to which the defendants belonged. It was held that no cause of action existed and that the acts done or agreed to be done gave plaintiff no right of action.

Defendants and plaintiffs were members of the same union. Defendants regarded plaintiffs' continued employment while older employes remained idle as a grievance to be passed upon by the courts of the order to which they belonged. The superintendent of the coal company, employing plaintiffs, approved of this course. The board of conciliation assumed jurisdiction and passed upon the controversy. Thereafter the defendants carried out the order of this tribunal. We cannot conclude that such conduct can be condemned as unlawful, nor can we agree that the only thing now in controversy, viz., plaintiffs' right to recover damages, should be adjudicated by a court of equity even though defendants' liability had been established.

To prevent a multiplicity of suits, equity, having assumed jurisdiction, will retain it and grant complete relief although it may ultimately result in merely a money decree: Head v. Meloney, 111 Pa. 99; Lafean et al. v. American Caramel Co., 271 Pa. 276; but, in the present case, equity never assumed jurisdiction. The prayer for a preliminary injunction was denied. There now remains nothing but the question of the financial responsibility or liability of the defendants to the plaintiffs.

Where the bill states a case entitling the complainant to equitable relief, if the proof fails to establish the averments of the bill in that respect, the court is without jurisdiction to proceed further and determine rights which are properly cognizable in a court of law: 21 C. J.

142, sec. 123; Ahl's Appeal, 129 Pa. 49; Kerlin v. Knipp, 207 Pa. 649. There is no authority for holding that equity can grant damages unless there is some case of equitable relief made out also, to which damages should be applicable or subsidiary: Bourget v. Monroe, 58 Mich. 563, 25 N. W. 514; Schook v. Zimmerman, 188 Mich. 617, 155 N. W. 526. In the present case no ground for equitable relief was or has been made out.

### Conclusions of law

1. Plaintiffs have not established a case entitling them to equitable relief.

2. Plaintiffs' prayer for an injunction having been denied after hearing, a court of equity should not exercise jurisdiction to determine plaintiffs' right to damages.

3. The bill should be dismissed, the respective parties to pay their own costs.

### Decree nisi

It is ordered, adjudged and decreed: (1) that plaintiffs' bill be dismissed; and (2) that the respective parties pay their own costs.