WILLIAM L. CORSE and others *vs.* SAMUEL LEGGETT and others, executors of Samuel Leggett, deceased.

The plaintiffs, who were the children of B. C., were entitled under the will of I. C. to a fourth part of the residuum of his estate. A part of such estate consisted of a bond and mortgage given to the testator by B. C. The executors of the will advertised the mortgaged property for sale, under a decree of foreclosure. Previous to the sale, an arrangement was made between B. C. and their maternal grandfather, S. L., for the purpose of protecting the interests of the plaintiffs, that S. L. should, at such sale, purchase the whole or a part of the mortgaged property, and hold, manage, and dispose of it, 1. To reimburse himself for his advances and expenditures, and 2. As to the surplus, if there should be any, for the use and benefit of his said grandchildren. S. L. accordingly purchased, at such sale, a portion of the mortgaged premises, and received a conveyance therefor. At the same time a declaration in writing was signed by him, and inserted in a book provided for that purpose, stating that the book was to contain an account of the cost, expenses, income, profit and loss of the real estate so purchased by him, which said purchase, with all profits or loss that might be realized was made by him for and on account of the plaintiffs, and for their joint and equal benefit, share and share alike; and that upon a final settlement S. L. after having been fully reimbursed, should convey to the plaintiffs such parts of the property as should remain unsold, and account to them for the profits, &c., and that if there should be any loss they should allow and pay the same, "the whole transaction having been entered into by the said S. L. for their sole benefit and advantage." Following this was a certificate signed by B. C. stating that it was in accordance with the arrangement entered into between himself as guardian of his children, and S. L. This book was delivered to B. C. in behalf of his children. Two of the lots were sold by S. L. soon after, at an advance. The purchase money was received by him, and he was charged with it, in the same book, and a regular account of receipts and disbursements was kept in such book. The book was inscribed, in the handwriting of S. L., as follows: "S. L., trustee for the children of B. C." S. L. died in 1847, leaving a will dated in 1840, and a codicil executed in 1845. The defendants, the executors of S. L., afterwards sold the said lands under and pursuant to a power contained in the will of S. L. at a profit of about $8000.

*Held*, 1. That the writing signed by S. L. was not a mere promise to give to the plaintiffs the surplus profits which might result from the transaction, and as such void, from a defect of parties, a want of consideration, and a non-delivery of the gift; but was executed pursuant to an arrangement proposed by the father and natural guardian of the children, and accepted by S. L. previous to the sale; and the arrangement was supported by the consideration of natural love and affection, and was, under the circumstances, entirely proper, and raised a strong equity in the plaintiffs' favor.

2. That as the declaration was reduced to writing, and signed by S. L., when

Corse *v.* Leggett.

he took the deeds, there was a sufficient compliance with the provision of the revised statutes, declaring that no trust shall be created or declared unless by act or operation of law, or by a deed or conveyance in writing subscribed by the party creating or declaring such trust.

3. That the definition of the term conveyance, given in the revised statutes, comprehends a declaration of trust, although not under seal.

4. That the declaration signed by S. L. qualified and controlled the interest and estate which he took under his deed. That he acquired the legal title, with the power of management and disposition, for his own reimbursement and indemnity, but with the trust fastened upon it; and the transaction gave an equitable interest in the property to the plaintiffs—a present interest in the surplus, whatever it might be.

5. That if considered as an express trust, this was such an one as is allowed by the revised statutes, and was therefore valid.

6. That S. L. took the property, so far as related to the excess over his advances and liabilities, as trustee for his grandchildren; and that whatever money his executors received, on the sale of the property, over and above the amount of those claims, belonged to the plaintiffs and not to those claiming under the will of S. L., or as his heirs at law.

A judgment was therefore entered, directing the defendants to account before a referee; and that upon the coming in and confirmation of his report, they should pay over to the plaintiffs whatever balance should be found due to them, upon these principles.

THIS was an action to compel the defendants, as executors of Samuel Leggett, deceased, to account for, and pay over to, the plaintiffs the profits received by the defendants and their testator, upon the sale of certain real estate alleged to have been held by the testator in trust for the plaintiffs.

*D. D. Lord*, for the plaintiffs.

*I. W. R. Bromley*, for the defendants.

S. B. STRONG, J. The plaintiffs are the four children of Barney Corse, who is, I believe, still living. They are entitled under the will of their paternal grandfather, the late Israel Corse, to the fourth part of the residuum of his estate, after the deduction of some portions of it bequeathed to others. A considerable part of such estate consisted of a bond and mortgage given to the testator by his son Barney Corse, upon several

lots in New York. The executors of the will advertised those lots for sale, by virtue of a decree in a suit to foreclose the mortgage. About the time of, and as it is to be inferred, previous to, the sale, an arrangement was made between the father of the plaintiffs and their maternal grandfather, the late Samuel Leggett, for the evident purpose of protecting or advancing their interests, that Leggett (should the circumstances attending such sale render it advisable,) should purchase the whole or a part of the mortgaged property, and hold, manage, and dispose of it; first, to reimburse himself for his advances and expenditures, and secondly, as to the surplus (if there should be any) for the use and benefit of his said grandchildren, according to the provisions of a declaration or explanatory article, signed by him immediately after the sale. Leggett accordingly purchased at such sale a considerable portion of the mortgaged premises, for which he received a conveyance, and at the same time a declaration in writing was signed by him, and inserted in a book specially provided for the purpose, stating that the book was to contain an accurate account of the cost, expenses, income, profit and loss of the real estate purchased by him at auction under a sale made by the master in chancery, by order, and for account, of the executors of the will of Israel Corse, which said purchase, with all profits or loss that might be realized, was made by him for and on account of the children of Barney Corse, as the heirs of the one fourth part of Israel Corse's estate, and for their joint and equal benefit, share and share alike. And it then stated that upon a final settlement, Leggett, after having been fully reimbursed, should convey to his said grandchildren such parts of the property as should remain unsold, and account to them for the profits, or what he might have sold, or what might remain unsold; and that it was expected that if there should be any loss they would allow and pay the same, " the whole transaction having been entered into by the said Samuel Leggett for their sole benefit and advantage." This is followed by a certificate, signed by Barney Corse, stating that it is in accordance with the arrangement entered into between himself as guardian for his children, and Leggett.

Two of the lots were sold by Leggett immediately afterwards, at an advance. The purchase money was received by him, and he was charged with it in the same book. He gave his bond, and a mortgage of the property, for what was purchased by, and conveyed to him. Barney Corse, with Leggett's consent, assumed the principal management of the property, received the rents and paid the taxes and other charges, and the interest on the mortgages. A regular account of receipts and disbursements was inserted in the new book, partly by Barney Corse, partly by one Cox, and partly by Leggett. There was an inscription on the book, in the handwriting of Leggett, as follows : " Sam. Leggett, trustee for the children of Barney Corse." Leggett died in 1847, having made a will dated in 1840, and a codicil executed in 1845, after the conveyance to him of the lands purchased at the mortgage sale. The defendants have since sold the said lands under and pursuant to a power contained in Leggett's will, at a profit of about $8000. The plaintiffs claimed such profit as their property, but the defendants decline paying it to them, as the claim is opposed by several of the residuary legatees named in Leggett's will ; and upon the institution of this suit they express their willingness " to account for, and pay over, whatever profits have been made on said premises, whenever, and so soon as, the rights of the respective claimants thereto shall be so settled as to justify said defendants in so doing."

The power given to the executors, in Leggett's will, is to sell and convey from time to time, and at all times, any part, or the whole, of his real estate. The codicil revokes the appointment of some of the executors, and substitutes others, and confers upon the retained and newly appointed executors all the powers and authority given to the executors named in the will. The will was executed before, and the codicil after, the purchase by Leggett of the lands in which the plaintiffs claimed an interest. As the execution of the codicil was in effect a republication of the will, the executors had the requisite power to make the sale, and indeed its validity was admitted by both

Corse *v.* Leggett.

parties. The only contest between them is as to the appropriate disposal of the profits.

The counsel for the defendants contends that the writing signed by Leggett is a mere promise to give the surplus profits which might result from the transaction, and that as such it was void, from a defect of parties, a want of consideration, and a non-delivery of the gift. If this had been simply a promise to give, the objections to it would have undoubtedly been fatal. The plaintiffs were, at the time, infants, and could not make a valid contract. If a promise is simply to pay money, or to perform some service for infants, and there is nothing to be done by them, they may affirm it, and thus give it vitality, when they attain their majority. But in this instance, if there was any contract, a part of it was that Leggett should be indemnified; and as there could not be any valid engagement by the infants to that effect, it would have been void from a want of mutuality. There was no other certain consideration than the natural regard which Leggett entertained for his grandchildren. That would have been sufficient to sustain an executed conveyance conveying a present interest, but would not have supported an executory contract. It is well settled that a promise to give, or an attempted gift, without delivery, is invalid.

But the declaration signed by Leggett was not, in effect, a simple promise to give any surplus which might be realized from the transaction, to his grandchildren. It was made pursuant to an arrangement proposed by the father and natural guardian of the children, and accepted by their grandfather, *previous to the sale.* It is unnecessary to decide whether the father had, as an incident to the parental relation, any authority to propose or assent to, the arrangement, in behalf of his infant children. It seems to be well settled, that where a trust is created in any manner, even without the knowledge of the *cestui que trust,* he may affirm it, and enforce the trust. (*Neilson* v. *Blight,* 1 *John. Cas.* 209, *per Radcliff, J.* 4 *Kent's Com.* 307, *and cases there cited.*) If any consideration had been necessary to raise or sustain the trust, that of natural love and affection ex-

isted in this case.   That is a good consideration to sustain a deed
from one to his grandchildren, and must be equally available
on the acceptance of a deed wholly or partly in trust for them,
although procured wholly through the means advanced by the
grand parent.   The arrangement was, under the circumstances,
entirely proper, and, as it may have prevented the interposition
of any other relative or friend of the children in their behalf,
it raises a strong equity in their favor.   As it was reduced to
writing and signed by Leggett when he took the deeds, there
was a sufficient compliance with the requisition of the provision
of the revised statutes, that no trust shall be created or de-
clared unless by act or operation of law, or by a deed or convey-
ance in writing, subscribed by the party creating or declaring
such trust.   (2 *R. S.* 134, § 6.)   The definition of the term
conveyance, given in the revised statutes, (1 *R. S.* 762, § 38,)
comprehends a declaration of trust, although not under seal,
as it is an instrument " by which the title to such estate may
be affected in law or equity."   It is reasonable to apply the
same definition wherever the word is used in the new code.
The book containing the writing was delivered to the father
of the plaintiffs, in behalf of his children.   The evidence to
prove the delivery (if indeed any actual delivery was necessary)
was much stronger than it was in *Grangiac* v. *Arden*, (10 *John.*
293.)   In that case Arden (the defendant) had purchased a lot-
tery ticket with his own funds, on which he had written the
name of his daughter Eliza, (the plaintiff,) who was then about
eight years old, and deposited it in his desk.   He retained it un-
til it drew a prize of $5000, when he presented it to the man-
agers and obtained the money..   It did not appear that the
plaintiff ever had the ticket in her possession, but the defend-
ant had several times declared that it was hers, and that she
should have the money.   The court decided that there was
sufficient evidence of delivery to render the gift effectual, and
the plaintiff recovered the money.

In the case under consideration, the declaration signed by
Leggett qualified and controlled the interest and estate which
he took under his deed.   He acquired the legal title with the

power of management and disposition, for his own reimbursement and indemnity, but with the trust fastened upon it. The transaction gave an equitable interest in the property to the plaintiffs—a present interest in the surplus, whatever that might be.

If this should be considered an express trust (and I am inclined to think that it is such,) it is such an one as is allowed by the revised statutes. It is in substance, to sell the lands, for the purpose " of satisfying the charge thereon," created by the mortgages executed by Leggett, and by the terms of his interposition in the disposition of the property. To that extent an express trust is valid. (1 *R. S.* 728, § 55, *sub.* 2.) Although the whole legal estate became vested in the trustee, subject only to the execution of the trust, (§ 60,) yet there was a valid declaration to whom the lands to which the trust relates should belong, on the termination of the trust. (§ 61.) If it became necessary to sell the entire property, in order to satisfy the charge thereon, and there was a surplus, that belonged to the plaintiffs, and whoever received it held it in trust for them. As to such surplus, it could not, in any event, be the property of Leggett, or of those claiming under his will, or as his heirs at law. If there was not enough to create a valid express trust, the circumstances would raise an implied one. Leggett clearly obtained a title to the entire property, under the judicial sale, either in his own right or as a trustee. There was no reservation in favor of the former owner. It was well said by Chancellor Walworth, in *Sweet* v. *Jacocks*, (6 *Paige*, 364,) that if one " takes a conveyance, in his own name, of an estate which he undertakes to obtain for another, he will in equity be considered as holding it in trust for his principal. (*Parkist* v. *Alexander*, 1 *John. Ch.* 394. *Lees* v. *Nuttall, Tuml. Rep.* 282. 2 *Myl. & Keen*, 819, *S. C.*) More especially in a case where he assumes to act as the agent and protector of the rights of infants, and in that character obtains a conveyance in his own name which was intended for their benefit, will he be considered as holding the legal title in trust for them." In this case, therefore, Leggett took the property, so far as related to the excess over

his advances and liabilities, as trustee for his grandchildren. What money his executors raised, over and above what was sufficient to satisfy those claims, belonged to the plaintiffs.  The obligation to account, and to pay over what is due to the plaintiffs, devolved upon the defendants, whether in receiving the money they acted as executors or trustees.  Either may sue without joining with them the persons for whose benefit an action is prosecuted.  (*Code,* § 113.)  And there is nothing in the code, or at common law, rendering it necessary to join the beneficiaries as defendants, when the actions are against executors or trustees.  (*Story Eq. Pl. ch.* 4, § 150.  *Mitf. Pl.* 4, *Lond. ed.* 175.)

A judgment must be entered that the defendants account before a suitable referee, and that upon the coming in and confirmation of his report the defendants pay over to the plaintiffs whatever may be found due to them upon the principles which I have declared.

No costs are awarded against the defendants.

[WESTCHESTER SPECIAL TERM, September 8, 1857.  *S. B. Strong,* Justice.]