ISAAC N. BUMPUS v. SAMUEL R. BUMPUS AND MARY ANN BUMPUS.

*Specific performance—Vague contract—Land deeded to another.*

1. Contracts that are so vague in their terms that no one but the parties can say how great an expenditure they contemplate, cannot be specifically enforced by the courts, but must rest on the honor or good faith of the parties.

2. Where the purchaser of land has it conveyed to another, there is, in Michigan, no resulting trust (How. Stat. § 5569) and the latter has a legal right to keep it unless he has given back a written declaration of trust or some contract to convey to the purchaser.

3. A bill for specific performance will not lie, and has nothing to lie on, where a son who had orally agreed to support his parents in consideration of his being entitled to a conveyance from them of whatever estate he might acquire out of the farm profits beyond what they owned at the time, had all such property as he purchased from time

to time, and so had under his control, conveyed to his mother, who would not re-convey to him when he asked her to.

Appeal from Washtenaw. (Joslyn, J.) Apr. 8.—Apr. 16.

SPECIFIC PERFORMANCE.   Defendants appeal.   Reversed.

*Cutcheon, Crane & Stellwagen* for complainant.

*J. W. Babbitt* and *S. W. Burroughs* for defendant Mary.

COOLEY, C. J.   The bill in this case is filed to enforce the specific performance of an alleged parol contract.   Its allegations are as follows:

That in the year 1859 the defendant Samuel R. Bumpus, who is the father of complainant, was the owner of a farm in the township of Van Buren, which he still holds and occupies as a homestead.   That complainant became of the age of legal majority in February, 1859; that he had a younger brother, whose name is Myron M. Bumpus; that the father of complainant, and the other defendant, who is complainant's mother, were desirous that he should remain with them, carry on the farm, and manage their business interests; that they were also anxious to give said Myron a good education, and fit him for the law, or some other avocation which he might choose; and that complainant made an oral agreement, whereby it was mutually agreed as follows: that complainant should remain at home, cultivate, carry on and manage the said farm, keep the same in good repair, and furnish the defendant a good and comfortable support, and furnish all moneys necessary to educate said Myron, and pay all his necessary expenses while procuring a legal education, and should also furnish said Myron with all necessary funds to open a law office, and aid him pecuniarily in establishing himself in law business, or in any other business which he might choose to pursue; and that in consideration of the foregoing it was mutually agreed that complainant should have and be entitled to whatever real and personal estate he might thereafter acquire by means of his personal labor, industry and management, over and above the real and personal estate then

owned by the defendant Samuel R. Bumpus, whenever he should thereafter demand a conveyance and transfer of the same to him.

That the value of said homestead at the time of the making of said contract was $6400, and that of the personal estate not to exceed $500, and that was all the property the defendants or either of them then had.

That immediately after the making of the contract complainant entered upon the management of the farm, and continued in such management until about June 20, 1877, and that during that time he paid all the expenses of said Myron at school. That said Myron abandoned his purpose of procuring a legal education, but did nothing towards the management of the farm; that complainant was always willing to aid him in procuring a legal education and in establishing himself in the law, or in any other avocation.

That in the year 1864 complainant purchased of one Dickerson a tract of land in Van Buren containing about twenty-nine acres, which he paid for, and which was conveyed to his mother. In 1865 he purchased of one Hyatt another parcel containing twenty-two acres, another containing eighty acres, and another containing forty-seven acres, and ten lots in the village of Rawsonville, all of which were also conveyed to his mother. That in 1867 and 1868 he purchased of different parties a number of lots in Rawsonville, which were conveyed to complainant himself. These purchases were made from stock upon the farm, and from complainant's earnings in the management.

That in 1871 complainant purchased of one Yost an eighty-acre lot in Ypsilanti, and the same was conveyed to him and said Myron jointly.

That, in reliance upon his contract with defendants, complainant made many valuable improvements upon the homestead, and the other lands mentioned, and accumulated a large amount of personal property: that he supported the defendants and managed the business as his own, and that soon after December, 1876, he requested the defendants to transfer to him the personal property which he had accumu-

lated, and that they also transfer to him the lands bought of Dickerson and Hyatt, as above stated, and conveyed to defendant Mary Ann Bumpus, but that defendants refused to comply with the request, and on or about the twentieth day of June, 1877, they drove complainant off from the old homestead, and refused to allow him any compensation for his labor and services, though on his part he had fully performed his contract with them.

The prayer is that defendants be decreed to perform their said contract, and to convey to complainant the said Dickerson and Hyatt lands, and to account for rents and profits.

The defendants were at the trouble of answering this bill, which was altogether unnecessary, as it is very plain that it makes out no case for equitable relief. The contract itself, as set out, was in some particulars as vague as possible, and especially in all that relates to what was to be done for Myron in furnishing him with a legal education, and assisting him to get a start in business. Whether parties making such a contract would contemplate a cost of one thousand dollars, or of twenty thousand, no one but themselves could say; for the one sum might in some cases be made to answer or the other be required. Courts cannot enforce such contracts: they must rest for their performance upon the honor and good faith of the parties making them.

But an objection entirely fatal is that complainant has had the lands purchased of Dickerson and Hyatt, and done what he pleased with them. He seems to have made the purchases, and nothing appears to show that he was precluded from taking a conveyance to himself, or from having it made to any third person at discretion. What he did do was to have the lands conveyed to his mother; for what reason we do not know, nor is it important. He purchased the lands, as he claims he had a right to do, under the parol contract, and he must be deemed to have taken them under the contract, and in satisfaction of its provisions. That contract had nothing to do with what should be done with the lands, afterwards. He could no more, after having them deeded to his mother, call upon her to convey them to him because of

his having had a right to take them himself under the con-
tract, than he could make the same demand upon any stranger
to whom he might have had them conveyed. The case is
one of the purchase of lands by a party who causes them to
he conveyed to another instead of to himself: and in such a
case, unless the grantee gives back a written declaration of
trust or some contract to convey to the purchaser, he has a
legal right to retain what has been deeded to him. There is
no implied trust in favor of the purchaser (How. Stat.
§ 5569); and as the alleged contract does not reach the case,
there is therefore no basis for the bill.

The bill should have been dismissed, whatever were the
proofs. But the complainant's evidence fails to support the
allegations of the bill, and the decree which was rendered in
his favor is warranted neither by the bill nor by the proofs.
The decree awards to complainant eight thousand dollars for
his services for defendants, "in substitution for the specific
performance of the contract," but gives the defendants the
liberty to make payment in land, which the court proceeds to
describe by metes and bounds. Such a decree has no basis
whatever. It must be reversed, and the bill dismissed with
costs of both courts.

The other Justices concurred.