WILLIAM P. YERKES v. THE ESTATE OF HIRAM M. PERRIN, DECEASED.

*Uses and trusts.*

The statutes of uses and trusts are not complied with except by a contract or declaration of trust, signed by the holder of the legal title, and needing nothing outside of the papers to show the entire arrangement.

Error to Wayne. (Reilly, J.) Argued October 4, 1888. Decided October 12, 1888.

Claimant filed a claim for money had and received by the deceased in his life-time upon the sale of lands in which claimant had one-third interest, the title to which the decedent held in trust for him. The claim was disallowed by the commissioners on claims, whose decision was affirmed in the circuit court, and claimant brings error. Affirmed. The facts are stated in the opinion.

*Wilkinson & Post,* for appellant.

*Corliss, Andrus & Leete,* for estate.

CAMPBELL, J. This case, as presented in this Court, comes up to review the action of the circuit court for the county of Wayne, had on an appeal from commissioners on claims against the estate of Hiram M. Perrin, deceased. The circuit court directed a verdict for the estate.

Judge Yerkes, the claimant, presented two items of claim before the commissioners. One was for the value of one-third of the southerly two and one-fifth acres of lot 48, Porter farm, Detroit, included in H. M. Perrin's subdivision of outlot 48, and part of outlot 49, George B. Porter farm. The other was for one-third of the proceeds of sale of certain lots included in said plat; being lots 16, 17, 18, 19, 20, 21, 24, 25, 26, 27, and the lot lying south of said lot 26. The claims demanded, respectively, $3,000 and $2,000, and interest; without specifying date or other elements of the causes of action. The second item is the only one urged. This claim was demurred to as not maintainable without showing and trying title.

The circuit court allowed the claim to be tried. The statement in the claim filed throws no light whatever on the origin or nature of the claim. As far as it means anything, it means that Perrin had received $2,000 as the proceeds of the sale of one-third interest in the lots mentioned, belonging to Yerkes; but whether sold or received as attorney, agent, or otherwise, the claim does not indicate.

We do not think any case was made which could go to the jury. Upon the argument, the ground of the claim seems to have been, in substance, that, several years before 1861, Yerkes had an arrangement with one Frazer for an interest in this property; that by some mutual arrangement it was bid off by Perrin, in February, 1861,

on a sale in foreclosure proceedings, to which all these were parties; and that subsequently Yerkes paid Perrin his share of the money needed.   This whole transaction is so shadowy as to convey from the papers in the cause no definite knowledge.   But it is enough to say that Perrin's purchase is now relied on as a source of title, and that it was on its face so made as to vest in Perrin an absolute title.   The plat, which is also relied on, was made by Perrin alone, with his wife, immediately after the purchase.   This being so, it came very clearly within the statute declaring no resulting trust to arise from the purchase in one person's name at the expense of another; and such a title could only be made subject to rights in other persons, either by some executory contract, or some valid declaration of trust, either of which must have been entirely in writing, and signed by Perrin.[1]

There is no letter or other paper showing, or tending to show, the terms of any agreement whereby Perrin was to buy this property for the benefit of Yerkes, or on what terms.   The only papers in the case which identify the property as in any way concerning Yerkes are certain letters, only one of which contains anything like a definite description, and neither of which can, on the

---

[1] Counsel for appellant contended that no particular formality is required or necessary in the creation of a trust; that it may be by an express declaration, or by any informal memorandum; citing *Bellamy v. Burrow*, Cas. Talb. 97; *Fisher v. Fields*, 10 Johns. 495; *Corse v. Leggett*, 25 Barb. 389; *Urann v. Coales*, 109 Mass. 581; or by letters; citing *Foster v. Hale*, 3 Ves. Jr. 696; *Montague v. Hayes*, 10 Gray, 609; *Kingsbury v. Burnside*, 58 Ill. 310; *Loring v. Palmer*, 118 U. S. 321; or by a pamphlet; citing *Barrell v. Joy*, 16 Mass. 221; or a receipt; citing *Faxon v. Falvey*, 110 Mass. 392; or a deposition or affidavit; citing *Pinney v. Fellows*, 15 Vt. 525; or a recital in a bond; citing *Gomez v. Bank*, 4 Sandf. 102; or in a deed; citing *Wright v. Douglass*, 7 N. Y. 564; or an answer in chancery; citing *Patton v. Chamberlain*, 44 Mich. 5, and cases cited; in short, by any writing in which the fiduciary relation between the parties can be clearly read; citing Perry, Tr. § 82, and cases cited.  Nor is it necessary that such letters, *memoranda*, or recital should be addressed to the beneficiary, or should have been intended when made to be evidence of the trust; citing Perry, Tr. § 82; Browne, Stat. Frauds, §§ 88, 109.

most liberal construction, be construed as a declaration of trust.

On April 25, 1861, Perrin wrote to Yerkes as follows:

"Jas. Frazer has not paid to me anything more than was paid by Mr. Hawley on the Porter-street property since the sale, February 5. Will it be possible for you to pay for me at Mich. Ins. Bank the amount of money that will be required on your interest in said tract by the fifth of next month? I have a note falling due then that must be paid somehow, and I cannot collect money here at present. Please answer this, directing to me at Ypsilanti, upon receipt."

The answer of Yerkes does not appear, except as it is referred to in a letter from Perrin to him of May 2, as follows:

"Yours of April 29, directed to me at Ypsilanti, reached me at that place, saying that the money would be ready for me when called for. You have not yet informed me to whom you would have the deed made. Another thing I have thought to be best, which is to have a *divided* interest, instead of an 'undivided,' so that each can look after and dispose of and otherwise control his own. I have thought perhaps it would be as well for me, upon closing up all that I may do about passing titles to the parties that I purchased at chancery sale, to have all that I finally own in one patch. Perhaps if you and Frazer are interested in fixing, you and he may make some arrangement where each would be located on the tract, so as to leave my interest in one lot or parcel. This, however, may or may not affect the payment of the money by you, as we can fix that satisfactorily afterwards, if my neck is not broken to pay my notes at bank, Will you please do me the favor to deposit the money in Mich. Ins. Co. Bank to credit of my account, that I may check for it to pay my note? And please write me how you will have the deed pass, or to whom it shall be made. As I now understand it, you will be entitled to a deed, in clearing up this thing, to one-third of the southerly two acres, and one-fifth (2 1-5) of lot 48. I shall be willing, if it please you and Frazer, that you shall be located on the extreme southerly portion of the tract, although that

will perhaps be more valuable, as it will be a little nearer the city."

On May 6, 1861, Yerkes answered this letter, as follows:

"Your favor of May 2 was received by me this morning. I have waited all day to see Frazer, and make a last effort on him; but find out to-night that he has been absent in the country for near a week. I will deposit to-morrow (I can't get into bank to-night) $192, the amount of my share, to your credit, as you desire, and take your note for the amount, until I can find a purchaser. I will make this all right with you when I see you. You understand that I am not purchasing, and the reason therefor."

There are some more recent letters indicating that Yerkes had some interest in the property which may possibly have been this, but none showing what that interest was.

It has been uniformly held in this State that the statutes are not complied with except by a contract or declaration of trust signed by the party, and needing nothing outside of the papers to show the entire arrangement.[1]

It is manifest, from this correspondence, that Perrin's letter of May 2 refers to some arrangement, written or unwritten, whereby Yerkes and Frazer were, upon some terms not mentioned, to have a third interest in a part of Perrin's foreclosure purchase. It does not appear what the rights were as between Frazer and Yerkes, or how much money was to be paid by either or both of them "in clearing up this thing." The letter in reply from Yerkes, while it mentions $192 as his share, does not propose to make it a payment, but as a loan to Perrin, which was to be rectified by subsequent arrangement, which does not appear.

---

[1] Counsel for defendant cited *Bumpus v. Bumpus*, 53 Mich. 346; *Weare v. Linnell*, 29 Id. 227; *Linsley v. Sinclair*, 24 Id. 382; *Hooker v. Axford*, 33 Id. 457; *Groesbeck v. Seely*, 13 Id. 329; *Newton v. Sly*, 15 Id. 396.

While it may be inferred, by guessing from circumstances and parol evidence, that Yerkes became in some way entitled to some interest, there is no writing, by way of contract, declaration, or otherwise, executed under Perrin's hand, and signed by him, whereby Yerkes is shown to have had a third or any other interest, or on what terms he was entitled to obtain it.

This being so, no case was made out, and the court below properly charged the jury.

The judgment must be affirmed.

The other Justices concurred