HARDY v. HEIDE.

1. FRAUD—EVIDENCE—SETTING ASIDE DEED—ADEQUACY OF CONSIDERATION—MENTAL CAPACITY.

In suit to set aside deeds by administratrix of estate of person who had been afflicted with senile dementia and had the mental capacity of a five-year old child at time of executing deeds of duplex dwelling property rentable for $40 a month and upon which a mortgage was then being foreclosed, finding of trial judge that fraud had been perpetrated upon the grantor in securing deed for $200 *held*, correct under evidence showing grantor had right to possession for upwards of a year and grantee is shown to have disposed of the equity shortly thereafter for $500.

2. EQUITY—FRAUD—CONCEALMENT OF IDENTITY.

In suit to set aside certain deeds executed subsequent to one shown to have been procured as result of fraud, that a party took title in another's name and thereby concealed her identity *held*, to raise a serious suspicion as to validity of transaction.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASER FOR VALUE—EVIDENCE—FRAUD.

Where undisputed evidence was that party in whose name a conveyance was taken paid no consideration therefor and was not intended to have any beneficial rights in the property, it shows that she was not a *bona fide* purchaser for value, hence her interests are not superior to those of personal representative of estate of mentally incompetent grantor mortgagor who, for inadequate consideration, parted with equity of redemption of premises upon which mortgage was then in process of being foreclosed.

4. SAME—BURDEN OF PROOF—VALUE—NOTICE OF FRAUD.

Generally one acquiring title from a fraudulent grantor has the burden of proving that he paid value and took without notice of the fraud.

5. TRUSTS—COMMON-LAW PURCHASE-MONEY RESULTING TRUST.
   Common-law purchase-money resulting trusts have been abolished
   in this State by statute (3 Comp. Laws 1929, § 12973).

6. VENDOR AND PURCHASER—BONA FIDE PURCHASER—EVIDENCE—
   MORTGAGES—EQUITY OF REDEMPTION.
   Party who claimed to be a *bona fide* purchaser for value of prop-
   erty, through her nominee, of equity of redemption of duplex
   residence on which there was a mortgage then being foreclosed
   *held,* not to have rights superior to rights of personal repre-
   sentative of estate of mortgagor who was mentally incompe-
   tent when deed was executed for an inadequate consideration
   where record fails to show a deed from nominee to claimant
   or of any contract or trust agreement between them satisfying
   statute of frauds (3 Comp. Laws 1929, § 13411).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted October 4, 1939. (Docket No. 46, Calendar No. 40,683.) Decided December 20, 1939.

Bill by Charles L. James, by Minnie C. Hardy, his guardian, against R. J. Heide, Joan Parker, and Robert E. Sage, Circuit Court Commissioner, to set aside deeds, for an injunction and other relief. Zelda O. Demont intervened as a party defendant. Minnie C. Hardy, as administratrix of the estate of Charles L. James, deceased, substituted as party plaintiff. From decree rendered, plaintiff appeals. Reversed.

*Thomas W. Thompson (Edward Martin Welch,* of counsel), for plaintiff.

*David M. Miro,* for defendants Demont and Parker.

BUTZEL, C. J. Charles L. James, on August 13, 1936, was suffering from senile dementia in the advanced stage. He had the mental capacity of a five-year old child. He was the title owner of a duplex

dwelling house in Detroit on which there was a mortgage in process of foreclosure, the sheriff's sale being set for August 28, 1936, so that the equity of redemption had over a year to run. James lived in the lower flat, which he rented to an army officer in return for room and board. James unquestionably was in a bad way and absolutely unfit to transact any business or to look after himself. He was approached by one Roy J. Heide, a real estate dealer, who, notwithstanding a warning that James was incompetent, succeeded in getting him to the office of a notary on August 13, 1936, where, in consideration of the sum of $200, James is alleged to have signed what is claimed to be his mark on both a quitclaim and a warranty deed for the property. The army officer testified that to induce the transfer, Heide represented that immediately after the sheriff's sale, James would be thrown out on the street, but that Heide "was buying it for his son-in-law who had just been married and wanted to live in that neighborhood." Heide claimed that he represented that he "had a party who was interested in a two-flat." As a matter of fact, James was entitled to remain in possession of the premises for the redemption period of a year after the sale, which had not yet taken place. A few days later, Heide interested the firm of Charles A. Smith & Company, who were in the business of managing real estate and buying equities. They claim to have bought the equity from him in the James property for $500 on behalf of one Joan Parker, whose name appeared on their books. She was named a grantee in both a warranty and quitclaim deed given by Heide. They examined only the exterior of the property and did not interview James, who was living in the lower flat. They realized that the two flats could be rented for $40 a month or thereabouts. It is claimed that a

$500 check was given to Heide. It was necessary to have two signatures, and since one of the signers was absent, Heide indorsed the check, received $500 in currency and signed a receipt for the amount. The check was never delivered to him nor presented at the bank. Joan Parker, purporting to act through her attorney, took steps at once before a circuit court commissioner to recover possession of the premises.

Minnie C. Hardy, a sister-in-law of James, upon being appointed by the probate court as his guardian, filed a bill to restrain dispossession and deposited in court the $200 paid by Heide. Mrs. Hardy, as administratrix of James' estate, was later substituted as party plaintiff. There can be no question about the total incompetency of James and that a fraud was perpetrated in obtaining what purports to be his signature or mark to the deeds for a wholly inadequate consideration and by fraudulent misrepresentation. The trial judge correctly found that a fraud was perpetrated on James.

The answer, filed on behalf of Joan Parker by an attorney who appeared for her and countersigned it, alleged that she lived in Chicago. This answer, sworn to by a member of the Smith firm, further alleged that she paid the sum of $500 for the equity of redemption, that she had no knowledge that Heide was not a *bona fide* purchaser, and that the deed was taken by her without notice of any defect in the title because of the fraud or James' infirmities. Mrs. Hardy, who had been appointed receiver *pendente lite,* had $660 from rentals in her possession at the time of the hearing which was after the equity of redemption had expired. Upon motion of Joan Parker to advance the cause and to set it for immediate trial, an answer was filed by plaintiff's counsel stating that Joan Parker was a material witness in

the case, that he had made diligent search for her but was unable to find her, and that her attorney promised in open court to obtain her address and disclose it to plaintiff but had so far failed to do so. Thereupon, when the case came up on chancery pretrial reference docket, the circuit judge entered an order that the attorney for defendant Parker produce Joan Parker in court on March 26, 1937. This was not complied with, but six days after the time set, one Zelda O. Demont, a sister of the members of the Smith firm, filed a motion to be substituted as party defendant in place of Joan Parker, claiming that she furnished the actual cash consideration for the purchase of the property from an investment account with the Smith firm; that she was the real party in interest, and that the person by the name of Joan Parker was suggested as grantee for the sake of convenience; that Joan Parker had left Mrs. Demont's employ and her present whereabouts could not be ascertained. The court refused to substitute Mrs. Demont as defendant but permitted her to intervene as party defendant. She then filed an answer stating that she lived in the city of Chicago, that she paid $500 for the title and was a *"bona fide* purchaser through her nominee Joan Parker."

There are many suspicious circumstances occurring in the transaction, but the trial judge found that the Smith firm was the agent of a *bona fide* purchaser. Inasmuch as the equity of redemption had expired, he ordered that the moneys held by the receiver be paid over to the attorney for Zelda O. Demont and Joan Parker, and that the costs be paid by plaintiff and deducted from the $200 deposited in court, and the balance to be paid to her. While we are impressed with the findings of the learned trial judge who saw the witnesses, no explanation was given as to why, if Zelda O. Demont was the

purchaser, she concealed her identity and did not take title in her own name instead of that of Joan Parker. That very fact in itself raises a serious suspicion, which the judge overlooked. The case, however, is reversed on other grounds.

As far as Joan Parker is concerned, she paid nothing for the property and did not appear in person. It is admitted that she paid no consideration for the transfer and was not intended to have any beneficial rights in the property. In fact, a member of the Smith firm testified that although he stated that he purchased the property from Heide for Mrs. Demont and he was authorized by her to purchase in the name of Joan Parker, he never informed Joan Parker of the purchase. When asked why he did not notify her, he stated:

"Because there is no such party as far as I was concerned."

Mrs. Demont did not testify at the main hearing of the case. The undisputed testimony informs us that Joan Parker is not a *bona fide* purchaser for value. The answer was signed and verified in her behalf by one whose testimony would indicate that he did not even know that such a person existed. With all the facts in the case, we cannot hold that her interests are superior to plaintiff's. It is a general rule that one acquiring title from a fraudulent grantor has the burden of proving that he paid value and took without notice of the fraud. See *Stephenson* v. *Golden*, 279 Mich. 710, and cases gathered on page 769. Defendants concede that Joan Parker never paid anything for the property; obviously she was not a *bona fide* purchaser. Thus, the burden has not been sustained.

Defendant Demont, however, claims that she is a *bona fide* purchaser for value through her nominee

Parker. Real estate is transferred by a formal instrument complying with statutory formalities. Not only is the record barren of any showing of a deed from Parker to Demont but there is not even any claim of an enforcible contract or trust agreement between Parker and Demont or any writing which would satisfy the statute of frauds. 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906). Perhaps defendant Demont falls back upon a common-law purchase money resulting trust. This was abolished by 3 Comp. Laws 1929, § 12973 (Stat. Ann. § 26.57), where it is stated:

"When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

Neither does the case come within 3 Comp. Laws 1929, § 12974 (Stat. Ann. § 26.58), which creates a presumption of fraud against the creditor of the party paying the consideration; nor within 3 Comp. Laws 1929, § 12975 (Stat. Ann. § 26.59), which takes out of the general rule cases where the grantee secured title in his own name without the knowledge or consent of the person paying the consideration, and the cases where the grantee takes title in his own name in violation of some trust. *Straus* v. *Barbee,* 262 Mich. 113, cited by defendant Demont, does not uphold her contention. We believe the instant case can be summed up by a citation from Mr. Justice Campbell in *Yerkes* v. *Perrin,* 71 Mich. 567:

"This whole transaction is so shadowy as to convey from the papers in the cause no definite knowl-

edge. But it is enough to say that Perrin's purchase is now relied on as a source of title, and that it was on its face so made as to vest in Perrin an absolute title. The plat, which is also relied on, was made by Perrin alone, with his wife, immediately after the purchase. This being so, it came very clearly within the statute declaring no resulting trust to arise from the purchase in one person's name at the expense of another; and such a title could only be made subject to rights in other persons, either by some executory contract, or some valid declaration of trust, either of which must have been entirely in writing, and signed by Perrin.''

Plaintiff raises other questions, but in view of our decision, they need not be discussed. The decree of the lower court is reversed and one may be entered directing the receiver to turn over the moneys on hand to herself as administratrix of plaintiff's estate and for cancellation of her bond; also for payment of costs to be taxed by both courts in her favor and to be deducted from the $200 deposited by her with the clerk of the court, the balance, if any, to be turned over to the attorney of record who appears for defendants.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.