Taylor, Respondent, vs. Bricker and wife, Appellants.

*October 7—November 5, 1952.*

378

The cause was submitted for the appellants on the brief of *Donald C. Jacobson,* attorney, and *Joseph F. Schoendorf* of counsel, both of Milwaukee, and for the respondent on the brief of *Rieser, Mathys, McNamara & Stafford* of Madison.

GEHL, J.  Defendants contend that the memorandum is too uncertain and indefinite to constitute a binding contract and that it does not meet the requirements of the statute of frauds, secs. 240.06 and 240.08.

With some difficulty we believe we have been able to read out of the paper an expression of the intent of the parties and its purpose.  That difficulty appears does not relieve us of the duty of determining whether it constitutes a contract sufficiently definite and unambiguous to be enforceable.

"In interpreting doubtful agreements a court will, if possible, attach a sufficiently definite meaning to a bargain of parties who evidently intended to enter into a binding contract. . . ." 1 Williston, Contracts (rev. ed.), p. 100, sec. 37.

It does not appear to us that the memorandum is indefinite. We are able to read out of its terms the subject of the agreement, the object to be accomplished, and the requirements as to performance.

Although the contract recites that the parties agree to exchange their properties it appears from its other provisions

that it was not contemplated that plaintiff desired actual ownership and possession of the defendants' property. It appears, rather, that it was her desire to sell her property for $26,000 cash and that the deal should be consummated by November 1, 1949, and that the provisions respecting the sale of the Bricker property were included in the contract to enable defendants to raise sufficient funds to buy plaintiff's property, and to give them time therefor. It was the purpose and the intent of the parties that plaintiff should have title to defendants' property pending the latters' effort to acquire the money necessary to pay for the plaintiff's property as security for the undertaking of the defendants to pay. That the parties recognized that under their arrangement no value could be placed upon the defendants' property is indicated by the fact that it is provided that the defendants would borrow $12,000 on the plaintiff's property when they acquired title, out of which they would use $6,000 to pay off an existing mortgage on the plaintiff's property and place the other $6,000 in escrow to be available to make up any difference which might result from the sale of the defendants' property for less than $26,000, and by the further provision that if the $6,000 to be held in escrow should not be adequate to provide sufficient funds for full payment of the $26,000 the defendants should be personally liable for such difference. In other words, and stated quite generally, it seems to have been the plan that the defendants would buy the plaintiff's property for $26,000 and pay toward said sum any amount which they might be able to realize out of the sale of their property.

Defendants contend that the contract is indefinite in that (a) it is not stated who is to sell the defendants' property; (b) there is no provision as to the terms upon which defendants' property is to be sold; (c) there is no provision concerning the disposition of the funds to be held in escrow in the event that the defendants' property is not sold prior to

November 1, 1949; (d) there is no provision as to the rights of the parties in the event that the defendants' property is not sold prior to November 1, 1949; (e) there is no provision as to the terms of the mortgage to be placed upon the plaintiff's property; (f) there is no provision as to who is to pay the taxes on the respective properties pending sale of the defendants' property; (g) there is no provision as to who is to occupy the plaintiff's property pending the sale of the defendants' property or who is to receive the rentals and profits of said property during that period; (h) the contract refers to payment "after adjustments" but does not state what shall be considered or included in the adjustments. The objections will be treated in the order above named.

(a) Since the defendants are to provide the purchase price of plaintiff's property it is reasonable to assume that it was for them to sell theirs. We so construe the contract.

(b) The terms of the sale of defendants' property are no concern of the plaintiff. She appears to be interested only in receiving $26,000 for her property. The terms of sale are a matter for determination by defendants without consultation with plaintiff.

(c) If defendants should fail to sell their property by November 1, 1949, or otherwise fail to acquire the purchase price of plaintiff's property, there would be a breach of contract on their part, and if it were then necessary to determine the interest of either party in the escrow such determination could readily be made in appropriate proceedings.

(d) What is said under the heading (c) is also applicable here.

(e) What is said under the heading (b) is applicable here.

(f) So far as appears from the record no taxes would become due and payable in the interval between the date of the contract and November 1, 1949.

(g) The agreement contains no provision as to the occupancy of plaintiff's property pending consummation of the deal; nothing in the agreement restricts defendants, their right to its use, or rentals which might be paid for its occupancy.

(h) It is provided that plaintiff is to receive $26,000 for her property. It is to be observed that the provision here referred to is that if defendants' property be sold for more than that amount the excess shall be paid to defendants. The phrase "after adjustments" must be construed to mean that out of such excess there should first be deducted whatever defendants might be required to pay in the way of commissions, etc., in connection with the sale of their property.

We do not find that any of the provisions of the contract are indefinite or uncertain.

The contention of defendants that the contract does not meet the requirements of the statute of frauds is based upon their conclusion that it does not state the price to be paid by defendants and the terms of payment. The price to be paid is definitely fixed at $26,000, all of it to be paid by November 1, 1949, whether acquired out of the sale of defendants' property or otherwise. The requirements of the statutes are met.

*By the Court.*—Judgment affirmed.