SHETNEY (Greta), Appellant, v. SHETNEY (Orville), Respondent. [Case No. 61.]

SHETNEY (Orville), Appellant, v. SHETNEY (Greta), Respondent. [Case No. 135.]

*Nos. 61, 135. Argued November 2, 1970.—Decided December 1, 1970.*

(Also reported in 181 N. W. 2d 516.)

28

For the appellant in Case No. 61 and the respondent in Case No. 135 there were briefs and oral argument by *Noreen G. Bengston* of Madison.

For the appellant in Case No. 135 and the respondent in Case No. 61 there were briefs and oral argument by *John G. Barsness* of Madison.

HEFFERNAN, J.

*The divorce action (Case No. 135)*

In *Gauger v. Gauger* (1914), 157 Wis. 630, 632, 147 N. W. 1075, we stated:

"The division of property . . . is peculiarly a matter resting in the discretion of the trial court, subject to such rules as have been established by this court for guidance in respect to the matter."

Sec. 247.26, Stats., provides in part:

". . . The court may also finally divide and distribute the estate, both real and personal, of the husband, and so much of the estate of the wife as has been derived from the husband, between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the ability of the husband, the special estate of the wife, the character and situation of the parties and all the circumstances of the case . . . ."

In *Radandt v. Radandt* (1966), 30 Wis. 2d 108, 113, 140 N. W. 2d 293, this court stated:

"While the division of estate in a divorce action is peculiarly within the discretion of the trial court, this court has repeatedly laid down the guideline that in general a third of the estate is a liberal allowance to the wife subject to be increased or decreased according to special circumstances. In *Kronforst v. Kronforst* [(1963), 21 Wis. (2d) 54, 61, 123 N. W. (2d) 528], we set forth four factors which would warrant granting an award of more than one third to the wife. These are a long period of marriage, complete lack of any separate estate in the wife coupled with her inability to support herself, low award of permanent alimony, and breakup of marriage due to husband's wrongful conduct."

In *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 173 N. W. 2d 142, we reviewed the earlier cases in respect to the division of property. We pointed out that what has been referred to as the "one-third rule" is not a rule and is not "an exact formula or mandatory measuring stick for property division in divorce cases." Rather, we concluded that the proper approach to be followed in a particular case "depends upon and derives from the material facts and factors present in such case."

We therefore disagree with the contention of the appellant, Orville Shetney, who takes the position that, since the property division herein gives almost the entire estate of the parties to the wife, it ipso facto evinces an abuse of discretion by the trial judge.

There are many factors which were approved in *Lacey v. Lacey, supra,* which would weigh in favor of an increased award to the wife in the instant case. The marriage was a long one, lasting sixteen years. The wife earned a salary of $7,300 at the time of trial, while her husband was earning substantially more. There was, in addition, evidence that, if she were to advance in her chosen field, it would be necessary for her to return to school to update her master's degree and to earn her doctorate degree. She was forty-two years of age, and her past work record indicated a patchwork of experience, which could not be expected to provide the foundation for stable earnings in the future. In addition, she assumed the debts on the real estate and automobile in the sum of almost $11,000. There was also evidence that Greta had contributed from $15,000 to $19,000 in earnings, as well as $1,500 in savings, to the support of the family during the period of the marital relationship. Such contributions of the wife from her separate estate may well be circumstances which the court should consider in a division of property. *Ausman v. Ausman* (1966), 31 Wis. 2d 79, 141 N. W. 2d 869.

On the other hand, there was evidence which militated against giving a higher percentage of the property to the wife. She was in good health at the time of the divorce. She was capable of earning money to support herself and was, in fact, employed at the time of the action. She had already received an education well above the average level. Since the couple was childless, she had no responsibility to any children of the marriage.

We cannot say on the record before us whether the trial judge's exercise of discretion was reasonable or

unreasonable, for the simple reason that we do not know which of these considerations influenced the trial court's exercise of discretion.

Divergent appraisals of the home of the parties were in evidence. The trial judge made no finding as to the value of the property. Moreover, there was evidence from which it could have been concluded that the sum of $5,000 paid over to the couple by Orville Shetney's father as a down payment on a home was a loan which Orville was obligated to repay. There was also testimony from which it could be concluded that the $5,000 advance was a gift. The trial court failed to resolve this question. The determination of whether Orville remained liable to his father for the $5,000 advance is a factor that must be considered in the division of the property.

In *Lacey v. Lacey, supra,* at page 386, this court stated:

"If on review the equitableness of a division of property is to depend upon the material facts and factors present in the case, it follows that a firm foundation for such division must be laid by including in findings or decision the factors found relevant and considered by the judge in reaching his decision as to property division. . . . If the findings of fact or the written decision do not indicate the basis on which the property was divided, and the reasons for so doing, review of the fairness of the result reached become not just difficult, it becomes impossible."

In *Lacey,* the cause was reversed and remanded in order that proper findings could be made.

We conclude that a similar disposition of this case is necessary. There was no determination whether the sums advanced by Greta Shetney during the course of the marriage were contributions to pay expenses which were the husband's obligation and therefore arguably a portion of her separate estate or whether they represented the common pooling of assets for the mutual benefit of the parties during the marital relationship.

We therefore conclude that, since there were neither findings nor written decision of the court that indicated any of the factors relied upon by the trial court in making the apportionment of the assets between the parties, it is necessary that the judgment be reversed and the cause remanded to the trial court for the purpose of making such findings as it deems appropriate and reasonable on the basis of the evidence adduced at trial.

### The contract action (Case No. 61)

It is apparent when reviewing these cases together that almost identical evidence was submitted by Greta Shetney in the divorce action and the contract action. In the divorce action, she contended that she had made contributions of from $15,000 to $19,000 which should be first returned to her as her separate estate. The record shows that Greta's counsel in the divorce action argued:

"The wife is entitled to her separate estate, whatever it may be. He [husband] suggested $15,000 and we suggested $19,000. We suggest that she is entitled to that, that is to be taken out first, and then the question of the division of the other properties which were accumulated under the marriage is to be considered."

On motions after verdict the trial judge compared the assertions made in the divorce action with those made in the contract action. He concluded that Greta Shetney had elected her remedy in the divorce action. The trial judge's excellent memorandum opinion points out:

". . . the wife's attorney conceded, that *all* of the evidence that had been introduced in this case to substantiate a consideration for the alleged contract in regard to the advanced education of the parties had also been introduced in the divorce action."

He concluded that, since the plaintiff had elected her remedy by making the same assertions in the divorce

action, she was barred in the contract action. He relied upon the recent case of *Bank of Commerce v. Paine, Webber, Jackson & Curtis* (1968), 39 Wis. 2d 30, 38, 158 N. W. 2d 350, wherein we quoted with approval 25 Am. Jur. 2d, *Election of Remedies,* pp. 653, 654, sec. 11:

" 'It has been said that the so-called "inconsistency of remedies" is not in reality an inconsistency between the remedies themselves, but must be taken to mean that a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy. For one proceeding to be a bar to another for inconsistency, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other. In this sense, inconsistency may arise either because one remedy must allege as fact what the other denies, or because the theory of one must necessarily be repugnant to the other. More particularly, where the election of a remedy assumes the existence of a particular status or relation of the party to the subject matter of litigation, another remedy is inconsistent if, in order to seek it, the party must assume a different and inconsistent status or relation to the subject matter.' "

We agree with the trial judge that the consecutive assertions of the same facts in the divorce action and the contract action are inconsistent, since the assertion of one involves the repudiation of the other. In the divorce action, the wife is obliged to claim that the moneys contributed were given to pay for family expenses which the husband was obligated to pay. In the contract action, she must inconsistently claim that they were made in the fulfillment of the wife's obligation under a separate contract. Her attempt to recover these contributions as a part of her separate estate in the divorce action constituted an unambiguous act consistent

with one and inconsistent with the other elected position. *Fox v. Wilkinson* (1907), 133 Wis. 337, 340, 113 N. W. 669, 14 L. R. A. ns 1107.

We are satisfied, however, that the defense of election of remedies was not properly raised by Orville Shetney in the trial of the contract case. We held in *Szuszka v. Milwaukee* (1961), 15 Wis. 2d 241, 112 N. W. 2d 699, that the election of remedies is an affirmative defense which must be pleaded in the answer. Since the defendant did not plead election of remedies, we conclude that the trial judge could not set aside the jury's verdict for that reason.

The defendant husband apparently lacked some confidence in the trial judge's determination to set aside the verdict on the basis that the plaintiff wife had previously elected an inconsistent remedy in the divorce action, for on appeal he urged additional reasons that the verdict be set aside. He claims that the court had no jurisdiction because the case was properly triable only in the county court. In *Syver v. Hahn* (1959), 6 Wis. 2d 154, 159, 160, 94 N. W. 2d 161, we quoted with approval 21 C. J. S., *Courts*, p. 745, sec. 492:

" 'Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action.' "

We have held that this is not a rule of jurisdiction, but is rather a principle of comity to avoid conflict in the execution of the judgments by independent courts. We have, however, pointed out in *Syver v. Hahn, supra,* page 162, that it was reversible error for a court to assume jurisdiction under the circumstances therein and that such assumption of jurisdiction constituted reversible error.

In the instant case, however, it is apparent that the divorce and property settlement in the county court and the contract action in the circuit court were not "on the same subject, and to test the same rights." The property division was based on the legal and equitable considerations set forth in sec. 247.26, Stats., while the case in the circuit court was dependent upon contract rights.

We see no error in the circuit court's exercise of jurisdiction.

Additionally, Orville Shetney contends on appeal that Greta Shetney failed to prove a contract as a matter of law. Our examination of the record fails to show that the defendant raised this issue in the trial court. We have frequently stated that this court will not consider, as a matter of right, matters not properly presented in the trial court. There are, however, well recognized exceptions to this rule. *Cappon v. O'Day* (1917), 165 Wis. 486, 490, 162 N. W. 655, involved the validity of a mortgage where certain objections to it were not of record. Mr. Justice ROSENBERRY discussed the rule that questions not raised and properly presented for review in the trial court will not be reviewed on appeal. He points out that this is a rule of administration and not of judicial power and that there are numerous exceptions to the rule. In that case, where all the facts were of record and the issue was a legal one, the court determined the question without it being raised before the trial court.

The same point was considered in *Braasch v. Bonde* (1926), 191 Wis. 414, 418, 211 N. W. 281, wherein the court concluded that ". . . it unquestionably has the power to and may consider the entire record and dispose of questions of law clearly presented on the record . . . ."

A similar conclusion was reached in *James Employees Credit Union v. Hawley* (1958), 2 Wis. 2d 490, 87 N. W. 2d 299.

We are satisfied that a question of law is presented by the assertion of the defendant on appeal which this court has the power to decide. We elect to do so.

We conclude that the terms of the alleged agreement were so vague and indefinite as to prevent the creation of an enforceable contract. We have carefully examined the almost 1,000 pages of record and transcript. Therein appear repetitious contentions and countercontentions *ad nauseam*. The record is loaded with trivia which was injected by both counsel despite the valiant efforts of the trial judge to keep the parties to the point at issue. Despite this voluminous mass of testimony, we nowhere found in the record any evidence of a clear understanding or even a clear assertion of any contractual terms. Perhaps the most straightforward statement of what the contract purported to be appears in the testimony of Greta Shetney. She stated:

"The contract was I will get your degree I said to Orville and when you get it will you not help me get my degree and the answer was 'yes.' "

The allegation of the plaintiff's complaint was:

". . . that the parties hereto entered into an agreement whereby the plaintiff agreed that she would assist the defendant herein in securing a doctor's degree in Music Theory from Indiana University, and that the defendant herein would assist the plaintiff in securing a doctor's degree upon his completion of the same."

A vague or indefinite contract is not enforceable.

1 Corbin, *Contracts,* p. 394, sec. 95, provides:

"A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of

that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." *See* similar language in 1 Williston, *Contracts* (3d ed.), p. 110, sec. 37.

We bear in mind the principle that a court should, if possible, attach a sufficiently definite meaning to a bargain of the parties who intended to enter into a contract and that a contract should not be vitiated by lack of definiteness if the conduct of the parties will reasonably supply the omissions. *Taylor v. Bricker* (1952), 262 Wis. 377, 55 N. W. 2d 404.

We cannot in this case spell out from either the statement of the alleged agreement or the conduct of the parties promises that are definite enough to be enforceable.

In *Bumpus v. Bumpus* (1884), 53 Mich. 346, 19 N. W. 29, the plaintiff entered into an oral agreement whereby he promised to "furnish all moneys necessary to educate" the plaintiff's younger brother and to pay all "necessary expenses while procuring a legal education" and also to furnish the brother with the "necessary funds to open a law office." Under these circumstances, the Michigan Supreme Court held that the terms of the contract were too indefinite to be enforceable. It pointed out that the agreement of what was to be done in furtherance of the brother's education was vague and unenforceable. Such agreements, which the court said "must rest for their performance upon the honor and good faith of the parties," are not enforceable as a contract.

In the instant case the vague assertion that the parties would mutually assist each other in the furtherance of their education and the evidence presented collateral to this issue were not sufficient for a jury to determine the nature and extent of the agreement which the parties allegedly entered into prior to their marriage.

We are satisfied that, if a proper motion had been made prior to the submission of the questions to the jury, the trial judge would not have permitted the jury to proceed with a verdict.

We conclude that the alleged agreement was too indefinite to be enforceable. We, accordingly, affirm the judgment of the trial court on the ground that, as a matter of law, the evidence was insufficient to spell out a contractual relationship.

In each of these actions counsel for the parties flagrantly violated the rules of this court in the preparation of their briefs and appendices. In the divorce action, the appendix of the appellant husband, Orville Shetney, in violation of sec. 251.34 (5) (c), Stats., reprinted most of the transcript verbatim from the record. That section requires that the appendix contain an abridgement of the transcript in a *narrative* form. Accordingly, costs are denied to the appellant, Orville Shetney, in that appeal. In the contract action, the appellant wife's appendix reprinted only verbatim language from the record and failed to cover much of the material testimony in the record. It was also in violation of sec. 251.34 (5) (c).

It should also be pointed out that, in the contract action, the husband respondent but sketchily set forth the facts in the brief, and his appendix contained verbatim excerpted portions of the transcript, which were completely out of context and failed to apprise the court of the point at issue.

Inasmuch as primary responsibility for furnishing a proper appendix falls upon the appellant, we conclude that, despite the respondent's violation of the rules, he is entitled to recovery of one half of the costs in the contract action.

*By the Court.*—The judgment in the divorce action, Case No. 135 on appeal, is reversed in respect to the division of property only, and the cause is remanded for further proceedings consistent with this opinion. No costs are to be assessed.

The judgment in the contract action, Case No. 61, is affirmed, with one half the costs to be awarded to the respondent.